## HOAG v. NEW JERSEY.

No. 40.   Argued November 19, 1957.—Decided May 19, 1958.

*Robert E. Knowlton,* acting under appointment by the Court, 352 U. S. 958, argued the cause and filed a brief for petitioner.

*David D. Furman,* Deputy Attorney General of New Jersey, argued the cause for respondent.   With him on the brief was *Grover C. Richman, Jr.,* Attorney General.

Mr. Justice Harlan delivered the opinion of the Court.

In this case we are asked to set aside, under the Due Process Clause of the Fourteenth Amendment, a state conviction secured under somewhat unusual circumstances.

On June 26, 1951, a Bergen County, New Jersey, grand jury returned three indictments against the petitioner charging that on September 20, 1950, in concert with two others, he robbed three individuals, Cascio, Capezzuto and Galiardo, at Gay's Tavern in Fairview, New Jersey. These indictments were joined for trial. The State called five witnesses: the three victims named in the indictment, and two other persons, Dottino and Yager. Dottino and Yager were also victims of the robbery, but they were not named in the indictment. All the witnesses, after stating that they were in Gay's Tavern on September 20, testified to the elements of a robbery as defined in the New Jersey statute: [1] that they were put in fear and that property was taken from their persons. The petitioner, who claimed that he was not at the tavern on the fateful day and testified to an alibi, was the sole witness for the defense. Although Galiardo and Dottino had both identified petitioner from a photograph during the police investigation, only one of the witnesses, Yager, identified him at the trial as one of the robbers. On May 27, 1952, the jury acquitted the petitioner on all three indictments.

---

[1] Section 2:166-1 of the Revised Statutes of New Jersey, under which petitioner was indicted, provided:

"Any person who shall forcibly take from the person of another, money or personal goods and chattels, of any value whatever, by violence or putting him in fear . . . shall be guilty . . . ."

This section was subsequently repealed and substantially re-enacted. N. J. Stat. Ann., 1953, § 2A:141-1.

Subsequently, on July 17, 1952, another Bergen County grand jury returned a fourth indictment against petitioner, which was the same as the first three in all respects except that it named Yager as the victim of the robbery at Gay's Tavern. At the trial upon this indictment the State called only Yager as a witness, and he repeated his earlier testimony identifying petitioner. The defense called Cascio, Capezzuto, Galiardo and Dottino, and they each once again testified either that petitioner was not one of the robbers or that a positive identification was not possible. Petitioner repeated his alibi. This time the jury returned a verdict of guilty. The conviction was sustained on appeal in both the Superior Court of New Jersey, 35 N. J. Super. 555, 114 A. 2d 573, and the Supreme Court of New Jersey, 21 N. J. 496, 122 A. 2d 628. We granted certiorari to consider petitioner's claim, timely raised below, that he was deprived of due process. 352 U. S. 907.

Petitioner contends that the second prosecution growing out of the Gay's Tavern robberies infringed safeguards of the Double Jeopardy Clause of the Fifth Amendment which are "implicit in the concept of ordered liberty" and that these safeguards as such are carried over under the Fourteenth Amendment as restrictions on the States. *Palko* v. *Connecticut*, 302 U. S. 319, 325. More particularly, it is said that petitioner's trial for the robbery of Yager, following his previous acquittal on charges of robbing Cascio, Capezzuto, and Galiardo, amounted to trying him again on the same charges. However, in the circumstances shown by this record, we cannot say that petitioner's later prosecution and conviction violated due process.

At the outset it should be made clear that petitioner has not been twice put in jeopardy for the same crime. The New Jersey courts, in rejecting his claim that conviction for robbing Yager violated the Double Jeopardy

Clause of the State Constitution,[2] have construed the New Jersey statute as making each of the four robberies, though taking place on the same occasion, a separate offense. This construction was consistent with the usual New Jersey rule that double jeopardy does not apply unless the same evidence necessary to sustain a second indictment would have been sufficient to secure a conviction on the first. See *State* v. *Di Giosia,* 3 N. J. 413, 419, 70 A. 2d 756, 759; *State* v. *Labato,* 7 N. J. 137, 144, 80 A. 2d 617, 620. Certainly nothing in the Due Process Clause prevented the State from making that construction.

But even if it was constitutionally permissible for New Jersey to *punish* petitioner for each of the four robberies as separate offenses, it does not necessarily follow that the State was free to *prosecute* him for each robbery at a different trial. The question is whether this case involved an attempt "to wear the accused out by a multitude of cases with accumulated trials." *Palko* v. *Connecticut, supra,* at 328.[3]

We do not think that the Fourteenth Amendment always forbids States to prosecute different offenses at consecutive trials even though they arise out of the same occurrence. The question in any given case is whether such a course has led to fundamental unfairness. Of course, it may very well be preferable practice for a State

---

[2] Article I, par. 11, of the New Jersey Constitution provides in part that "No person shall, after acquittal, be tried for the same offense."

[3] Indeed, the New Jersey Superior Court recognized this problem under the double jeopardy clause of the State Constitution when it said in the present case: "Assuredly our prosecutors are aware that the concept of double jeopardy is designed to prevent the government from unduly harassing an accused, and we are confident that they will not resort unfairly to multiple indictments and successive trials in order to accomplish indirectly that which the constitutional interdiction precludes." 35 N. J. Super., at 561–562, 114 A. 2d, at 577.

in circumstances such as these normally to try the several offenses in a single prosecution, and recent studies of the American Law Institute have led to such a proposal. See Model Penal Code § 1.08 (2) (Tent. Draft. No. 5, 1956).[4] But it would be an entirely different matter for us to hold that the Fourteenth Amendment always prevents a State from allowing different offenses arising out of the same act or transaction to be prosecuted separately, as New Jersey has done.[5] For it has long been recognized as the very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice. See *Hurtado* v. *California,* 110 U. S. 516; *Maxwell* v. *Dow,* 176 U. S. 581; *West* v. *Louisiana,* 194 U. S. 258; *Twining* v. *New Jersey,* 211 U. S. 78. In the last analysis, a determination whether an impermissible use of multiple trials has taken place cannot be based on any over-all formula. Here, as elsewhere, "The pattern of due process is picked out in the facts and circumstances of each case." *Brock* v. *North Carolina,* 344 U. S. 424, 427–428. And thus, without speculating as to

---

[4] See also Horack, The Multiple Consequences of a Single Criminal Act, 21 Minn. L. Rev. 805; Kirchheimer, The Act, The Offense and Double Jeopardy, 58 Yale L. J. 513; Gershenson, Res Judicata in Successive Criminal Prosecutions, 24 Brooklyn L. Rev. 12.

[5] The New Jersey Rules in force during 1952 provided:

"Rule 2:4–15 Joinder of Offenses [now Revised Rule 3:4–7]:

"Two or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged, whether high misdemeanors or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

"Rule 2:5–4 Trial of Indictments or Accusations Together [now Revised Rule 3:5–6]:

"The court may order two or more indictments or accusations to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment or accusation."

hypothetical situations in which the Fourteenth Amendment might prohibit consecutive prosecutions of multiple offenses, we reach the conclusion that the petitioner in this case was not deprived of due process.

In *Brock* v. *North Carolina, supra,* this Court upheld a state conviction against a somewhat similar claim of denial of due process. In *Brock* two of the State's key witnesses had previously been tried and convicted of crimes arising out of the same transaction which formed the basis of the charge against the petitioner. Before judgments were entered on their convictions they were called by the State to testify at petitioner's trial. Because of their intention to appeal their convictions and the likelihood of a new trial in the event of reversal, the two witnesses declined to testify at petitioner's trial on the ground that their answers might be self-incriminatory. At this point the State was granted a mistrial upon its representation that the evidence of the two witnesses was necessary to its case and that it intended to procure their testimony at a new trial of the petitioner. This Court held that a second trial of the petitioner did not violate due process.

Remembering that the Yager robbery constituted a separate offense from the robberies of the other victims, we find no basis for a constitutional distinction between the circumstances which led to the retrial in *Brock* and those surrounding the subsequent indictment and trial in the present case. It is a fair inference from the record before us that the indictment and trial on the charge of robbing Yager resulted from the unexpected failure of four of the State's witnesses at the earlier trial to identify petitioner, after two of these witnesses had previously identified him in the course of the police investigation. Indeed, after the second of the two witnesses failed to identify petitioner, the State pleaded surprise and attempted to impeach his testimony. We cannot say

that, after such an unexpected turn of events, the State's decision to try petitioner for the Yager robbery was so arbitrary or lacking in justification that it amounted to a denial of those concepts constituting "the very essence of a scheme of ordered justice, which is due process." *Brock* v. *North Carolina, supra,* at 428. Thus, whatever limits may confine the right of a State to institute separate trials for concededly different criminal offenses, it is plain to us that these limits have not been transgressed in this case.

Petitioner further contends that his conviction was constitutionally barred by "collateral estoppel." His position is that because the sole disputed issue in the earlier trial related to his identification as a participant in the Gay's Tavern robberies, the verdict of acquittal there must necessarily be taken as having resolved that issue in his favor. The doctrine of collateral estoppel, so the argument runs, is grounded in considerations of basic fairness to litigants, and thus for a State to decline to apply the rule in favor of a criminal defendant deprives him of due process. Accordingly, it is claimed that New Jersey could not relitigate the issue of petitioner's "identity," and is thus precluded from convicting him of robbing Yager.

A common statement of the rule of collateral estoppel is that "where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action." Restatement, Judgments, § 68 (1). As an aspect of the broader doctrine of *res judicata,* collateral estoppel is designed to eliminate the expense, vexation, waste, and possible inconsistent results of duplicatory litigation. See Developments in the Law—Res Judicata, 65 Harv. L. Rev. 818, 820. Although the rule was originally developed in connection with civil litigation, it has been widely employed in criminal cases in both

state and federal courts.   See, *e. g., Harris* v. *State,* 193 Ga. 109, 17 S. E. 2d 573; *Commonwealth* v. *Evans,* 101 Mass. 25; *United States* v. *Oppenheimer,* 242 U. S. 85; *Sealfon* v. *United States,* 332 U. S. 575; cf. *Yates* v. *United States,* 354 U. S. 298, 335.

Despite its wide employment, we entertain grave doubts whether collateral estoppel can be regarded as a constitutional requirement.   Certainly this Court has never so held.   However, we need not decide that question, for in this case New Jersey both recognized the rule of collateral estoppel and considered its applicability to the facts of this case.   The state court simply ruled that petitioner's previous acquittal did not give rise to such an estoppel because "the trial of the first three indictments involved several questions, not just [petitioner's] identity, and there is no way of knowing upon which question the jury's verdict turned."   21 N. J., at 505, 122 A. 2d, at 632. Possessing no such corrective power over state courts as we do over the federal courts, see *Watts* v. *Indiana,* 338 U. S. 49, 50, note 1, we would not be justified in substituting a different view as to the basis of the jury's verdict.

It is of course true that when necessary to a proper determination of a claimed denial of constitutional rights this Court will examine the record in a state criminal trial and is not foreclosed by the conclusion of the state court.   *Niemotko* v. *Maryland,* 340 U. S. 268, 271; *Feiner* v. *New York,* 340 U. S. 315, 316.   But this practice has never been thought to permit us to overrule state courts on controverted or fairly debatable factual issues.   "On review here of State convictions, all those matters which are usually termed issues of fact are for conclusive determination by the State courts and are not open for reconsideration by this Court.   Observance of this restriction in our review of State courts calls for the utmost scruple." *Watts* v. *Indiana, supra,* at 50–51.

In this case we are being asked to go even further than to overrule a state court's findings on disputed factual issues. For we would have to embark on sheer speculation in order to decide that the jury's verdict at the earlier trial necessarily embraced a determination favorable to the petitioner on the issue of "identity." In numerous criminal cases both state and federal courts have declined to apply collateral estoppel because it was not possible to determine with certainty which issues were decided by the former general verdict of acquittal. See, *e. g., People* v. *Rogers,* 102 Misc. 437, 170 N. Y. Supp. 86; *State* v. *Erwin,* 101 Utah 365, 422–424, 120 P. 2d 285, 312–313; *United States* v. *Halbrook,* 36 F. Supp. 345. Keeping in mind the fact that jury verdicts are sometimes inconsistent or irrational, see, *e. g., Dunn* v. *United States,* 284 U. S. 390; *United States* v. *Dotterweich,* 320 U. S. 277, 279; *Green* v. *United States,* 355 U. S. 184, we cannot say that the New Jersey Supreme Court exceeded constitutionally permissible bounds in concluding that the jury might have acquitted petitioner at the earlier trial because it did not believe that the victims of the robbery had been put in fear, or that property had been taken from them, or for other reasons unrelated to the issue of "identity." For us to try to outguess the state court on this score would be wholly out of keeping with the proper discharge of our difficult and delicate responsibilities under the Fourteenth Amendment in determining whether a State has violated the Federal Constitution.

Finally, in the circumstances shown by this record, we cannot hold that petitioner was denied a "speedy trial" on the Yager indictment, whatever may be the reach of the Sixth Amendment under the provisions of the Fourteenth.[6] And we need hardly add that the sufficiency

_____

[6] The robbery at Gay's Tavern occurred on September 20, 1950. On September 23 or 24, 1950, petitioner absconded from parole in New York. He was arrested on November 20, 1950, and returned to

of the evidence to support the identification of the petitioner as one of the Gay's Tavern robbers is a matter solely within the province of the state courts.

*Affirmed.*

MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE WARREN, dissenting.

I think the undisputed facts disclosed by this record plainly show that the conviction of this petitioner has been obtained by use of a procedure inconsistent with the due process requirements of the Fourteenth Amendment. These are the facts: On Sept. 20, 1950, three armed men entered a tavern in Fairview, New Jersey, lined up five persons against a wall and robbed each of them. Petitioner alone was charged in three indictments with robbery of three of these five victims. The three indictments were joined for trial. At his trial, petitioner put only one fact in issue—whether or not he was one of the men who had committed the robbery. All five

---

prison in New York, where he remained until January 12, 1952, when he was transferred to the Bergen County jail in New Jersey. In the meantime, on June 26, 1951, the Bergen County grand jury returned indictments charging petitioner with the robberies of Cascio, Capezzuto and Galiardo. These were tried together, at petitioner's first trial, on May 26 and 27, 1952. Following his acquittal petitioner was returned to New York to complete his sentence, and he was in a New York prison on July 17, 1952, when the Bergen County grand jury returned the indictment charging him with the robbery of Yager. New Jersey reacquired petitioner by extradition on May 11, 1954. The second trial was held on October 18, 1954, at the next term of the Bergen County Court, which was not in session for criminal trials during the summer months. It thus appears that a substantial portion of the time elapsing prior to petitioner's trial on the Yager indictment can be accounted for by his incarceration in New York.

victims testified for the State on this issue. Three said petitioner was not the man; one said he could not swear that petitioner was the man; one made a positive identification of petitioner. Petitioner's sole defense was an alibi. He sought to establish his presence elsewhere at the time of the robbery. The jury heard all the evidence, duly deliberated, and found petitioner not guilty. Thereafter, petitioner was indicted and tried for the robbery of victim number four. This time, only the victim who had identified petitioner as one of the robbers at the first trial was called by the State as a witness. The other four victims testified for the defense. All five testified substantially as at the first trial. Again, the only contested issue was whether petitioner was one of the three robbers. Again, petitioner testified that he was in New York City at the time of the robbery. This time the jury found petitioner guilty.

The issue is whether or not this determination of guilt, based as it is on the successive litigation of a single issue that had previously been resolved by a jury in petitioner's favor, is contrary to the requirements of fair procedure guaranteed by the Due Process Clause of the Fourteenth Amendment. The issue is not whether petitioner has technically committed five offenses, nor whether he could receive a total of five punishments had he been convicted in a single trial of robbing five victims.

Few would dispute that after the first jury had acquitted petitioner of robbing the first three victims, New Jersey could not have retried petitioner on the identical charge of robbing these same three persons. After a jury of 12 had heard the conflicting testimony of the five victims on the issue of the robber's identity and concluded that at least a reasonable doubt existed as to whether petitioner was one of the robbers, the same evidence could not be presented to 12 new jurors in the hope that they would come to a different conclusion. I fail to

see how the unconstitutionality of that procedure is altered one whit by the fact that the new indictment, brought in this case after petitioner's acquittal, relates to a different victim of the same robbery. The name of the particular victim specified in the indictment has absolutely no bearing on the issue of the robber's identity. The vice of this procedure lies in relitigating the same issue on the same evidence before two different juries with a man's innocence or guilt at stake. This taints the second trial, whether the new indictment charges robbery of the same or different victims.

The Court finds it unnecessary to come to grips with this problem, because it elects to defer to the appraisal of the record made by a 4–3 majority of the New Jersey Supreme Court. That court concluded that the first trial raised issues other than identity of the robber, thus making it impossible to say that the jury's verdict of acquittal resolved the issue of identity favorably to petitioner. This Court now concludes that the state court's appraisal of the record was a resolution of the sort of "factual issue" that is normally not open for reconsideration by this Court. But " 'issue of fact' is a coat of many colors." *Watts* v. *Indiana,* 338 U. S. 49, 51. In my view the issue posed here is not a "fact issue" at all. The facts are clear and undisputed. The problem is to judge their legal significance. And since the claim of a denial of due process depends on an evaluation of the significance of these undisputed facts, the task of making that evaluation is inescapably the function of this Court. *Niemotko* v. *Maryland,* 340 U. S. 268, 271; *Watts* v. *Indiana, supra; Fay* v. *New York,* 332 U. S. 261, 272.

Assessing the significance of a jury verdict in some criminal cases may involve, as the Court terms it, "sheer speculation." But the records of other trials are such as to indicate plainly, when "viewed with an eye to all the circumstances of the proceedings," *Sealfon* v. *United*

*States,* 332 U. S. 575, 579, that a jury verdict of acquittal is determinative of a particular issue that was contested at that trial. This Court unanimously found the record in *Sealfon* v. *United States, supra,* sufficient to justify such a conclusion. Cf. *Emich Motors Corp.* v. *General Motors Corp.,* 340 U. S. 558. Other courts have similarly evaluated trial records and come to the same conclusion in situations where, precisely as in the instant case, the sole contested issue was the identity of the criminal. *United States* v. *De Angelo,* 138 F. 2d 466; *Harris* v. *State,* 193 Ga. 109, 17 S. E. 2d 573; *People* v. *Grzesczak,* 77 Misc. 202, 137 N. Y. Supp. 538. Of course, such a review of the record cannot tell us in fact what was in the mind of each juror. This we would not know even if the issue of the robber's identity in this case had been submitted to the jury as a special interrogatory, for an answer in petitioner's favor might reflect a wide assortment of "facts" believed by each juror. But because a court cannot say with certainty what was in the mind of each juror is no reason for declining to examine a record to determine the manifest legal significance of a jury's verdict.

Evaluating the record in this case requires no speculation. The only *contested* issue was whether petitioner was one of the robbers. The proof of the elements of the crime of robbery was overwhelming and was not challenged. The suggestion that the jury might have acquitted because of a failure of proof that property was taken from the victims is simply unrealistic. The guarantee of a constitutional right should not be denied by such an artificial approach. The first jury's verdict of acquittal is merely an illusion of justice if its legal significance is not a determination that there was at least a reasonable doubt whether petitioner was present at the scene of the robbery.

The Court's effort to enlist *Brock* v. *North Carolina,* 344 U. S. 424, in aid of the conclusions reached is, in my view, entirely unwarranted. In that case a trial was halted before completion when two state witnesses unexpectedly invoked their privilege against self-incrimination and declined to testify. Upon a motion by the prosecutor, a mistrial was declared. On retrial, the defendant was convicted, and this Court affirmed. Whatever view one might take of the correctness of that decision, its holding should not be expanded to cover the situation here. The obvious difference between that case and this is that *Brock* does not involve determination of the same issue by two different juries. At the first *Brock* trial, the case never went to the jury. Here, however, the prosecution did not ask for a mistrial when its own witnesses failed to give expected testimony. Instead, the State proceeded to the conclusion of the trial, and the issue of guilt, which turned solely on the issue of identity, went to the jury. The verdict was in petitioner's favor. The trial was free of error. To convict petitioner by litigating this issue again before 12 different jurors is to employ a procedure that fails to meet the standard required by the Fourteenth Amendment.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

We recently stated in *Green* v. *United States,* 355 U. S. 184, 190, that by virtue of the constitutional protection against double jeopardy an accused can be forced to "run the gantlet" but once on a charge. That case, involving a federal prosecution, provides for me the standard for every state prosecution as well, and by that standard this judgment of conviction should be reversed.[1]

---

[1] See *Brock* v. *North Carolina,* 344 U. S. 424, 440 (dissenting opinion).

Hoag is made to run the gantlet twice. The facts are simple. Five men—Cascio, Capezzuto, Galiardo, Dottino, and Yager—were together at Gay's Tavern when three armed men entered and robbed them. Petitioner was indicted and tried for the offenses of robbing three of the five.

One indispensable element of the crime was the taking of property "by violence or putting him in fear," as provided by the New Jersey statute defining robbery. N. J. Stat. Ann., 1939, 2:166-1.[2] The critical evidence was petitioner's alibi: He claimed to be at another place at the time. One witness, however, identified him as one of the robbers. The jury acquitted. Then petitioner was indicted for robbing one of the remaining five named individuals. The criminal transaction, unlike that in *Burton* v. *United States,* 202 U. S. 344, 378, was indivisible. The time and place were the same.[3] The central issue was the same, for, as stated by Justice Heher, dissenting, below, ". . . here the assaults were simultaneous, the putting in fear was but a single act or offense operating

---

[2] This section has been repealed and re-enacted in substantially the same form. N. J. Stat. Ann., 1953, 2A:141-1.

[3] *Gavieres* v. *United States,* 220 U. S. 338, arose in the Philippines under an Act of Congress which applied to the Islands the protection of double jeopardy. Petitioner was first convicted of being drunk and indecent in a public place, an offense under an ordinance of Manila. Then he was convicted a second time for insulting a public official, a crime under the penal code of the Islands. The acts and words charged in the second prosecution were the same as those charged in the first. The Court sustained the second conviction, Mr. Justice Harlan dissenting, on the grounds that while "the conduct of the accused was one and the same, two offenses resulted, each of which had an element not embraced in the other." *Id.,* at 345. This case appears contrary to the position I take here. But it, like other cases arising under the laws of the Philippine Islands prior to their independence, has not been deemed an authoritative construction of the constitutional provision. See *Green* v. *United States, supra,* at 194–198.

alike upon all the victims of the felonious endeavor at the same time." 21 N. J., at 510, 122 A. 2d, at 635. The basic facts canvassed were the same. Petitioner's alibi was tendered once more. The testimony of the selfsame witness identifying petitioner as one of the robbers was introduced. This time petitioner was convicted.

The resolution of this crucial alibi issue in favor of the prosecution was as essential to conviction in the second trial as its resolution in favor of the accused was essential to his acquittal in the first trial. Since petitioner was placed in jeopardy once and found not to have been present or a participant, he should be protected from further prosecution for a crime growing out of the identical facts and occurring at the same time.[4]

---

[4] In 1912, a New York court, under almost identical circumstances, stated:

"The only litigated question of fact on both these indictments is the presence of the accused when these crimes were committed. That question having once been decided, it cannot again be tried. Should the jury in this case find the defendant guilty under the defense herein interposed, that of an alibi, we would be confronted with two incompatible verdicts, which would amount to a finding on the one hand that the defendant was not present, and on the other hand that he was present." *People* v. *Grzesczak,* 77 Misc. 202, 206, 137 N. Y. Supp. 538, 541.

Or, as Chitty said:

"It is not, in all cases, necessary that the two charges should be precisely the same in point of degree, for it is sufficient if an acquittal of the one will show that the defendant could not have been guilty of the other." 1 Chitty, Criminal Law (5th Am. ed. 1847), 455.

To like effect is *State* v. *Shepard,* 7 Conn. 54, 55–56,

"He has been convicted of an *assault, with an attempt to commit a rape;* for this he has been punished. Of these facts he has been found guilty; and they must be alleged, and proved, to convict him of a rape. But for these facts he cannot be tried again; otherwise, he might be twice punished for the same fact."

And see *State* v. *Cooper,* 13 N. J. L. 361; *State* v. *Labato,* 7 N. J. 137, 80 A. 2d 617; *Commonwealth* v. *Roby,* 12 Pick. (Mass.) 496, 504–505.

Hoag was once made to "run the gantlet" on whether he was present when the violence and putting in fear occurred. Having once run that gantlet successfully, he may not be compelled to run it again.[5]

---

[5] The result I reach does not square with *Palko* v. *Connecticut*, 302 U. S. 319. Palko was indicted for the crime of murder in the first degree and was found guilty by a jury of murder in the second degree. He was sentenced to confinement for life. Pursuant to a state statute, the prosecution appealed and obtained a reversal and a new trial. This time Palko was convicted of murder in the first degree and sentenced to death. That is a decision under the Double Jeopardy Clause with which I do not agree since Palko was forced to face the risk of the death penalty twice on the same evidence and the same charge.