[No. 201-2.    Division Two.    April 7, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. ARNOLD MAX-
WELL HARRIS, *Petitioner*, ROBERT D. MCMULLEN,
*Judge of the Superior Court for Clark
County, Respondent.*

*Robinson, Landerholm, Memovich, Lansverk, Whitesides
& Marsh, Dale V. Whitesides,* and *Duane Lansverk,* for
petitioner (appointed counsel for appeal).

*R. DeWitt Jones, Prosecuting Attorney,* for respondent.

**REVIEW GRANTED BY SUPREME COURT**

PEARSON, J.—The petitioner, Arnold Maxwell Harris, has

applied to this court for a writ of prohibition, directed to the Superior Court for Clark County, claiming that certain criminal informations filed against him in cause No. 6809 place him in double jeopardy under the United States Constitution and the State of Washington Constitution, and further contending that the doctrine of collateral estoppel bars relitigation of issues litigated in a former jury trial, held also in Clark County under cause No. 6746.

Petitioner also seeks mandamus to compel the trial court to allow bail.

Certified to this court in support of the petitions are the following:

1. A copy of an information filed in Clark County on June 25, 1969, which information provides:

That he, the said Arnold Maxwell Harris did, on the 10th day of June, 1969, wilfully, unlawfully and feloniously and with premeditated design to effect the death of Ralph Burdick did effect the death of Ralph Burdick by means of an explosive bomb, the said Arnold Maxwell Harris having sent the said explosive bomb to the said Ralph Burdick in the County of Clark, State of Washington, wherein Ralph Burdick did reside and that as a result of the same said bomb did explode in the County of Clark, State of Washington, on or about the 10th day of June, 1969, thereby wounding the said Ralph Burdick from which wounds the said Ralph Burdick died instantly on the 10th day of June, 1969 . . .

Portions of the record certified to this court show that petitioner stood trial upon his plea of "not guilty" before a jury in Superior Court for Clark County in October of 1969. The trial resulted in his acquittal of that charge by the jury on October 28, 1969.

2. He was immediately re-arrested on informations subsequently amended, which provide:

### Count I.

That he, the said Arnold Maxwell Harris did, on or about the 10th day of June, 1969, with intent to kill a human being, to-wit: Laila Violet Harris or to commit a felony upon the person of the one assaulted to-wit: Laila Violet Harris did assault the said Laila Violet Harris being then

and there in Clark County, State of Washington, with a deadly weapon and by force likely to produce death by placing or causing to be placed in the United States mail a package containing a bomb which was sent to the residence of the person assaulted at 2434 E. 8th Street, Vancouver, Washington, which package was so designed that upon opening it would explode and that the same did explode in the presence of and causing grievous bodily harm to Laila Violet Harris, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.

## Count II.

That he, the said Arnold Maxwell Harris did, on or about the 10th day of June, 1969, unlawfully and feloniously, with a premeditated design to effect the death of a human being or human beings, to-wit: Mark Allen Harris or by an act imminently dangerous to others and evincing a depraved mind, regardless of human life, but without a premeditated design to effect the death of any individual, did place or cause to be placed in the United States mail a package which contained a bomb, which was sent to an apartment at 2434 East 8th Street, Vancouver, Washington, which package was so designed that upon opening it would explode, and an explosion did occur in Clark County, State of Washington at the foregoing address, causing wounds and physical injury to an occupant of said room, to-wit: Mark Allen Harris, a minor boy of the age of sixteen (16) months, from which wounds the said Mark Allen Harris died on the 10th day of June, 1969.

To these amended informations petitioner entered a plea of "not guilty," a plea of former jeopardy and former acquittal, and a plea of the applicability of the doctrine of collateral estoppel and res judicata, charging in the plea that the present informations were in violation of his constitutional rights under the fifth and fourteenth amendments to the United States Constitution, and also under article 1, section 9 of the Constitution of the State of Washington and the tenth amendment thereof, and also were in violation of RCW 10.43.020, 10.43.040, and 10.43.050. It appears without dispute that petitioner has been in the Clark County jail continuously since June 25, 1969.

The record shows further that petitioner filed motions which were presented to the trial court to dismiss the amended information which had been filed on February 20, and that on February 24, 1970 the trial court entered an order denying the petitioner's motion to dismiss and also striking the defenses raised by petitioner's plea, namely double jeopardy, former jeopardy, former acquittal, res judicata, and collateral estoppel. Petitioner's motion to fix bail was denied and the trial court allowed petitioner's court appointed attorneys, at the expense of the state, to file a petition for writ of prohibition and/or writ of mandamus, but denied a companion motion for a statement of facts of the testimony produced at the trial of cause No. 6746.

The record before this court consists also of an agreed synopsis of the evidence produced at the first trial and as a part of the agreed synopsis this stipulation was made:

> In the course of the deliberations with the court in an attempt to settle the jury instructions, the trial judge made it clear that he would not instruct the jury on any lesser included crime [than first-degree murder] because whoever mailed the package containing the bomb must have done so with premeditated intent and, therefore, would be guilty of first degree murder.

The record before us also contains copies of the instructions submitted to the jury, the instructions pertinent to this review of which are instruction No. 3 and No. 4:

### INSTRUCTION No. 3

In this case, the state has charged the defendant with First Degree Murder. It is necessary that the state prove to you, beyond a reasonable doubt, each of the following elements of the crime charged, to-wit:

1) That the defendant with premeditated design to effect the death of Ralph Burdick did send to the said Ralph Burdick in Clark County, Washington, an explosive type bomb.

2) That the said bomb exploded, wounding Ralph Burdick, from which wounds, he died within one (1) year of June 10, 1969.

3) That the explosion and death occurred in Clark County, Washington, on or about June 10, 1969.

If you find that the foregoing elements have been proven beyond a reasonable doubt, then your verdict should be guilty.

### INSTRUCTION No. 4

You are instructed that the statutes of the State of Washington provide:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed

(1) With a premeditated design to effect the death of the person killed or of another. . . ."

The precise issues raised by this petition, aside from the initial jurisdictional issue, are issues of first impression in Washington and in order to properly focus on them, we set them forth as follows:

1. Does this court have jurisdiction to entertain the applications for prohibition and mandamus, or would the remedy by appeal be adequate?

2. If petitioner were placed on trial on the two counts set forth in the amended information, would he be placed in double jeopardy in violation of the federal and state constitutions?

3. If the amended informations do not give rise to the constitutional defense of former jeopardy, does the doctrine of collateral estoppel bar the relitigation of any issue or issues which may have been decided in the former trial, when the petitioner was acquitted of first-degree murder in connection with the death of Ralph Burdick?

4. Does this court have jurisdiction to review the collateral estoppel issue on an application for an extraordinary writ of prohibition?

5. In the event the trial proceeds, should the trial court set bail for the amended informations, in light of petitioner's previous acquittal on charges arising from the same alleged act?

The parties have agreed that by and large, with the exception of one additional piece of documentary evidence, the state will depend upon the same evidence that it used

in the first trial. That piece of ·evidence consists of an unsigned, typewritten letter which had been received by petitioner's wife on May 23, 1969. She is the victim of count 1 of the amended informations. That letter, if properly identified as emanating from the defendant, would tend to buttress the other evidence in the case to show petitioner's motivation for commission of the crimes. The document was excluded from evidence in the first trial on the grounds that it was a privileged communication between husband and wife, and it will be contended by the state on the new trial that said privilege cannot be asserted where the spouse is the victim (count 1 of the information), and where Mrs. Harris's son by Ralph Burdick is the alleged victim (count 2 of the information). Conceivably, because of the difference in the identity of the victims, the state may be able to make a stronger case for guilt of the petitioner in the present case than they were able to at the time petitioner was charged with first-degree murder in connection with the death of Ralph Burdick. No new evidence, however, will be presented to establish that defendant mailed the package containing the explosives.

At the outset, we must meet the jurisdictional question. Does this court have jurisdiction to issue an extraordinary writ to determine the substantive issues raised by the petition? The substantive issues, namely double jeopardy and collateral estoppel, have particular importance because the defendant is charged with a capital offense, and is held in the county jail without bail. Perhaps this is reason enough for us to brush aside a technical discussion of when a extraordinary writ will or will not lie.

We agree with a conclusion of Bennett Feigenbaum,[1] appearing in the Washington Law Review in 1961, to the effect that the decisional law on this question is in a confused state. 36 Wash. L. Rev. 1 (1961). Perhaps this confusion is understandable in light of the great variety of com-

---

[1] Member of the bars, of the. District of Columbia (1958), and the State of Washington (1959).

plex and important questions sought to be reviewed on an interlocutory basis.

Nevertheless, in construing the jurisdictional requirements for certiorari (RCW 7.16.040), mandamus (RCW 7.16.160 and RCW 7.16.170), and prohibition (RCW 7.16.290 and RCW 7.16.300), the Supreme Court recites the following two requirements for the issuance of an extraordinary writ by an appellate court: (1) the trial court acts without or in excess of its jurisdiction, and (2) the remedy at law is inadequate. *See Mattson v. Kline*, 47 Wn.2d 538, 288 P.2d 483 (1955). These requirements specifically appear in the statute. *See* RCW 7.16.290 and 7.16.300. Application of these requirements has been more obscure. There is a strong temptation for a reviewing court (which hears jurisdictional arguments and arguments on the merits in the same hearing) to apply the case equities on the merits, and if the petitioner's claim appears to have merit, to brush aside the jurisdictional question by simply deciding that the trial court has exceeded its jurisdiction and that petitioner's remedy by appeal would be inadequate. Perhaps this is the only satisfactory way the decisions on this question may be rationalized.

For example, does the fact that the petitioner will be put to the expense and delay of trial establish that his remedy by appeal is inadequate, assuming a case in which it is claimed that the trial court has exceeded its jurisdiction? In *Mattson v. Kline, supra,* it is stated at page 541:

> The policy which we have consistently followed, with regard to granting the writ where it is claimed that the trial court has exceeded its jurisdiction, was enunciated most recently in *State ex rel. Burkhard v. Superior Court*, 11 Wn. (2d) 600, 120 P. (2d) 477, p. 602, quoting from *State ex rel. Miller v. Superior Court*, 40 Wash. 555, 82 Pac. 877, 111 Am. St. 925:
>
> *"We again announce the rule that the adequacy of the remedy by appeal, or in the ordinary course of law, is the test to be applied by this court in all applications for extraordinary writs,* and not the mere question of jurisdiction or lack of jurisdiction; and that the adequacy of the remedy by appeal does not depend upon the mere

question of delay or expense. There must be something in the nature of the action or proceeding that makes it apparent to this court that it will not be able to protect the rights of the litigants or afford them adequate redress, otherwise than through the exercise of this extraordinary jurisdiction."

In other cases it appears arguable at least that the expense and delay of an additional trial has been sufficient for the Supreme Court to make a determination that the remedy by appeal is inadequate. *See Oliver v. American Motors Corp.*, 70 Wn.2d 875, 425 P.2d 647 (1967), where the court quoted with approval the early case of *State ex rel. Martin v. Superior Court*, 97 Wash. 358, 166 P. 630 (1917), where at pages 361 and 362 the court stated:

It would seem, if the statute grants a right that does not depend upon the merit of the case, but is independent of the merit of the case, that a litigant should not be put to the hazard, delay, and expense of a trial upon the merits as a prerequisite to the assertion of the right. In such cases, the court is called upon to deal with something more than "simply a law of procedure and practice," as was held by Judge Dunbar, and properly so, considering the record in the case of *State ex rel. Townsend Gas & El. L. Co. v. Superior Court*, 20 Wash. 502, 55 Pac. 933. It is a right made equivalent to the right to fix the venue of a local action under the statute, and when asserted should not be thrust aside as an incident or an error to be heard upon an appeal from a judgment on the merits. The terms "speedy and adequate," when applied to remedies, mean, or ought to mean, a remedy adequate and timely to review the particular error relied on, and not merely a remedy which depends upon a proper determination of the issues as defined by the pleadings, and such questions of practice and procedure as may arise in bringing the case to issue, and trying out the facts.

Wherefore it may be said, where there is a right to a trial in a particular place, which right is independent of the issue as tendered by the complaint, an adequate remedy means a trial in the first instance by a court having jurisdiction to hear and determine the merits.

In *Oliver* it was held that appeal would not be an adequate remedy to review an order of the trial court which

dismissed one of two defendants on the basis of jurisdiction, which dismissal would require the plaintiff to have tried his case on the merits as to a remaining defendant before he could appeal from such dismissal. That case gives recognition that undue delay and the expense of trial may, at least under the circumstances of that case, make the remedy by appeal inadequate.

The policy considerations for sparing use of the extraordinary writ should be briefly mentioned. It is said that the jurisdictional preference of review by appeal is two-fold: (1) the orderly and efficient administration of justice demands no interference in the ordinary course of litigation, a single appeal rather than multiple, piecemeal appeals, *Maybury v. Seattle*, 53 Wn.2d 716, 336 P.2d 878 (1959); and (2) when causes are appealed in the regular course of the proceedings after a trial on the merits they are presented to the reviewing court with more carefully prepared briefs and may be determined in a more deliberate fashion. *State ex rel. Miller v. Superior Court*, 40 Wash. 555, 82 P. 877 (1905). There is unquestionable validity to both of these policies, if you assume with reference to No. 1 that the issuance of the extraordinary writ will not result in a termination of the entire proceedings, and with reference to No. 2 if you assume that the attorneys have not had sufficient time to brief the matters involved and that the appellate court is so swamped with work that it cannot give due consideration to the issues presented. Both of these assumptions may in any given case be invalid assumptions.

Where, as here, the parties have submitted briefs on the important issues involved which are superior to many this court receives after a trial on the merits, and where, as here, the petitioner has made a compelling, 2-pronged attack which, if accepted by this court, would terminate any further litigation, there is no reason to believe that either of the above two policy considerations would be sufficiently compelling to warrant a denial of our assuming jurisdiction.

We are tempted to announce the rule that the rem-

edy by appeal is inadequate whenever it appears inequitable to require the litigants to proceed through a lengthy, expensive trial which, if the present state of the case were allowed to continue, would mean an unquestioned reversal and termination of the entire litigation when appealed after the trial. Perhaps some of the conflicting decisions may be rationalized on this basis. Its application would presuppose that the reviewing court had sufficient record on which to make an intelligent and informed judgment as to the likelihood of an ultimate, after-trial reversal and dismissal on appeal, were the proceedings allowed to continue without the interference of the appellate court on an interlocutory basis. This court chooses to believe that the proper basis for determining whether or not the remedy by appeal is adequate in a case of this nature should be judged by whether or not this court would on appeal, after trial, be obliged to reverse the judgment and dismiss the charges, were the case to proceed as the record shows it must now proceed.

We have not mentioned the question of whether the trial court has or has not acted without or in excess of its jurisdiction, which statutory requirement is as much a hurdle to accepting jurisdiction as is the question of whether or not the remedy by appeal is adequate. We have delayed this question because inherent in it is a review on the merits of the substantive questions of double jeopardy and/or collateral estoppel.

We consider the double jeopardy issue first. Article 1, section 9 of the Washington State Constitution provides: "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense." A similar provision, of course, appears in the fifth amendment to the United States Constitution. The double jeopardy clause of the Fifth Amendment has recently been made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969). There are no Supreme Court decisions of this state that hold that a trial court acts without jurisdiction if it proceeds with a trial which would

place the accused in double jeopardy. We would think such a rule proper and logical since a constitutional prohibition to proceed seems a denial of jurisdiction.

■ However, without question, in this case, the trial court has jurisdiction over the parties and the subject matter of the action in the traditional meaning of jurisdiction. The crime for which the accused was charged occurred in Clark County, Washington. It requires no citation of authority to ascertain that the Clark County Superior Court has jurisdiction to try the accused for a crime which occurred in that county. This, then, is not a question of the court's acting without its jurisdiction, but whether or not it would be acting in excess of its jurisdiction in proceeding to try the defendant for the offenses charged in the amended information. Where the constitution prohibits a double jeopardy trial, it would be our view that a trial court does exceed its jurisdiction in proceeding with such trial.

Our research discloses no cases directly on this point. However, in State v. Durham, 39 Wn.2d 781, 238 P.2d 1201 (1951), the Supreme Court was faced with the question of whether it would assume jurisdiction by writ of prohibition, to enjoin a sanity hearing ordered by the trial court to determine whether or not defendant was mentally capable of remaining at large. A jury had found that it was unsafe for him to be at large, after acquitting him of the substantive charge. The Supreme Court determined that in addition to the elements of jurisdiction over the person and subject matter, there was a third essential element to establish jurisdiction, namely, that the point decided must be, in substance and effect, within the issues before the court. It reasoned that since the defendant's safeness to be at large had already been determined by the jury, the trial court's only alternative was to enter a judgment in accordance with the verdict, and that the court had in effect no jurisdiction or did exceed its jurisdiction in proceeding with a hearing to determine his fitness to be at large. It could be said within the rationale of that case that where

the constitution prohibits a second trial, a trial court is without or acting in excess of its jurisdiction in proceeding with such a trial.

Two earlier Washington Supreme Court decisions appear to sanction prohibition where double jeopardy is involved, without specifically discussing the jurisdictional requirement. *See State ex rel. Plumb v. Superior Court,* 24 Wn.2d 510, 166 P.2d 188 (1946); *State ex rel. Harger v. Chapman,* 131 Wash. 581, 230 P. 833 (1924). In any event we hold that the constitutional question of double jeopardy may be raised on a writ of prohibition on the grounds that if there is in fact double jeopardy the trial court is acting in excess of its jurisdiction in such instance.

■ Does this case involve double jeopardy? The Supreme Court of this state has made it clear in a number of decisions that double jeopardy exists if the offenses charged are identical or if a lesser offense can be said to be a constituent element in the perpetration of a greater offense. Double jeopardy does not exist where a defendant stands charged with different offenses, even though they may arise out of the same act. *State v. Johnson,* 60 Wn.2d 21, 371 P.2d 611 (1962); *State v. Boren,* 42 Wn.2d 155, 253 P.2d 939 (1953). Petitioner contends, however, that the federal double jeopardy rule which is now applicable to the states through *Benton v. Maryland,* would dictate a contrary result.

We might point out that in *Benton v. Maryland,* the petitioner had been charged and tried in Maryland state court with burglary and larceny. The jury had found him guilty on the burglary count, but not guilty on the larceny count. His appeal from that decision resulted in the Maryland Court of Appeals granting him a new trial because the grand and petit juries had been selected in an unconstitutional manner. He was given the option of demanding a reindictment and retrial or in letting his conviction to the burglary count stand. He chose to be reindicted and consequently he was again charged with both larceny and burglary. In the second trial, the jury found him guilty on both

counts and the courts of his own state rejected his plea of double jeopardy with reference to the larceny convictions. In a six to two decision on certiorari, the United States Supreme Court overruled an earlier contrary decision, *Palko v. Connecticut*, 302 U.S. 319, 82 L. Ed. 288, 58 S. Ct. 149 (1937), and held that the double jeopardy clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment and that under that standard the defendant's larceny conviction could not stand. Two members of the court who dissented, Justices Harlan and Stewart, disagreed with the application of the double jeopardy provisions of the Fifth Amendment to the states. It must be conceded that *Benton v. Maryland* is clearly distinguishable from the one at bar, since here the petitioner was not acquitted of the same offense for which he is sought to be retried.

Petitioner next asks us to consider *Green v. United States*, 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A.L.R.2d 1119 (1957), a case in which petitioner had been indicted by a grand jury on counts of (1) arson by maliciously setting fire to a house, and (2) first-degree murder by causing the death of a woman by arson. At his first trial he was found guilty of arson and second-degree murder. His appeal was successful and he was granted a new trial. He was tried again for first-degree murder under the original indictment and this time was found guilty of that charge. It was held a violation of the double jeopardy clause of the Fifth Amendment to have tried him again for first-degree murder, since he had been implicitly acquitted of that count by the jury at the first trial.

While petitioner concedes that this case is distinguishable, he asks us to consider the underlying basis for the decision, as set forth at page 187, as applying with equal force in this case:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an indi-

vidual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

We are also asked to consider *Abbate v. United States,* 359 U.S. 187, 3 L. Ed. 2d 729, 79 S. Ct. 666 (1959), a case also not in point, because it involved successive state and federal prosecutions for the same acts under criminal statutes of the two sovereigns, namely, Illinois and the United States. That case was decided before *Benton v. Maryland,* and Justice Brennan, who wrote the majority opinion, indicated that such successive prosecutions were not prohibited under the Fifth Amendment. However, Justice Brennan wrote a separate opinion, indicating that had both prosecutions for the same act been in the federal courts, even though charged under different statutes, the double jeopardy clause of the Fifth Amendment would have applied and prevented the second prosecution. At page 197 he stated:

I think it clear that successive federal prosecutions of the same person based on the same acts are prohibited by the Fifth Amendment even though brought under federal statutes requiring different evidence and protecting different federal interests.

It is also interesting to note that Chief Justice Warren and Justices Black and Douglas dissented in *Abbate* on the grounds that the double jeopardy clause of the Fifth Amendment would prohibit successive state and federal prosecutions for the same acts. The closest United States Supreme Court decision on this issue was *Hoag v. New Jersey,* 356 U.S. 464, 2 L. Ed. 2d 913, 78 S. Ct. 829 (1958). It should be emphasized that this case was decided before *Benton v. Maryland* applied the Fifth Amendment double jeopardy protection to the states, and therefore the Supreme Court was not construing the double jeopardy provision of the Fifth Amendment, but was concerned only with the due process clause of the Fourteenth Amendment. The

case is pertinent, however, since it did involve similar facts to those presented here. The facts of that case were that on September 20, 1950 three armed men entered a tavern in New Jersey, lined up five persons against a wall, and robbed each of them. The defendant was charged in three indictments with robbery of three of the five victims. These three indictments were tried together and the defendant was acquitted. He was then indicted and tried for robbery of a fourth victim and found guilty. Justice Harlan, writing for the majority, followed *Palko v. Connecticut* and refused to consider a violation of the Fifth Amendment double jeopardy and so purported to determine only whether or not the New Jersey court's construction of its own double jeopardy provision was a denial of due process under the Fourteenth Amendment to the United States Constitution. In speaking for the majority, Justice Harlan stated at pages 467 and 468:

> We do not think that the Fourteenth Amendment always forbids States to prosecute different offenses at consecutive trials even though they arise out of the same occurrence. The question in any given case is whether such a course has led to fundamental unfairness. Of course, it may very well be preferable practice for a State in circumstances such as these normally to try the several offenses in a single prosecution, and recent studies of the American Law Institute have led to such a proposal. See Model Penal Code § 1.08(2) (Tent. Draft No. 5, 1956). But it would be an entirely different matter for us to hold that the Fourteenth Amendment always prevents a State from allowing different offenses arising out of the same act or transaction to be prosecuted separately, as New Jersey has done. For it has long been recognized as the very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice.

(Footnotes omitted.)

It should be noted that Chief Justice Warren dissented, believing that such successive prosecutions would violate the due process clause of the Fourteenth Amendment and Justices Douglas and Black, in dissenting opinions, believed

that *Green v. United States* prohibited such successive trials by virtue of the Fifth Amendment double jeopardy provision. The latter two justices favored overruling *Palko v. Connecticut,* which, of course, has now been accomplished by *Benton v. Maryland.* We, thus, have a situation where the United States Supreme Court, since applying the Fifth Amendment double jeopardy requirements to the states via the Fourteenth Amendment, has not had occasion to decide the precise issue involved here, but we have an indication that three or perhaps four of the current members of the United States Supreme Court would, in fact, hold this situation to be double jeopardy under such Fifth Amendment guarantee. We point out also that the courts of states having considered the question are not in agreement whether the killing of two persons by the same wrongful act constitutes a single offense. *See* 172 A.L.R. 1053 (1948); 40 Am. Jur. 2d *Homicide* § 188 at 471 (1968).

However, we do not think that it is our function to speculate on the possibility of what the United States Supreme Court may do with this question in the future, even though a minority of the justices have expressed their views on it. We think that until it has been specifically decided by the United States Supreme Court, we should follow the decisions of our own state Supreme Court which hold that double jeopardy does not exist where the defendant stands charged with different offenses, even though they may arise from the same act.

For a similar ruling, *see United States v. Kramer,* 289 F.2d 909 (2d Cir. 1961), wherein Judge Friendly of the Second Circuit held that Fifth Amendment double jeopardy would not be violated simply because different offenses arise from the same criminal act.

We are compelled to conclude that the trial court did not operate without or in excess of its jurisdiction in its order denying petitioner's claim of double jeopardy, and in ordering the trial to proceed without such issue.

We now come to the second phase of this jurisdictional question—whether or not the trial court exceeded or acted

without its jurisdiction in striking defendant's defense of res judicata or collateral estoppel. As is apparent from our above analysis, if such a jurisdiction was lacking or exceeded, we would rule that a defendant charged with a capital offense and not subject to bail did not have an adequate remedy by appeal. Accordingly, an analysis of the defense of collateral estoppel will be made to ascertain if the trial court exceeded its jurisdiction in striking that defense and in ordering the trial to proceed without such defense.

It seems probable that the collateral estoppel doctrine is not a constitutional right, but one that has its beginnings in the common law. *See Hoag v. New Jersey, supra,* where the United States Supreme Court stated at page 471:

> Despite its wide employment, we entertain grave doubts whether collateral estoppel can be regarded as a constitutional requirement. Certainly this court has never so held.

■ However, doctrines of res judicata and collateral estoppel do apply in criminal cases. *State v. Peele,* 75 Wn.2d 28, 448 P.2d 923 (1968); *Sealfon v. United States,* 332 U.S. 575, 92 L. Ed. 180, 68 S. Ct. 237 (1948); *United States v. Kramer, supra; Hoag v. New Jersey, supra.* See Annot., 9 A.L.R.3d 203 (1966).

Collateral estoppel operates after a final judgment to establish conclusively a matter of fact or law for the purpose of a later lawsuit on a different cause of action between the parties or their privies to the original action. *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 429 P.2d 207 (1967); *United States v. Kramer, supra.*

"[C]ollateral estoppel is designed to eliminate the expense, vexation, waste, and possible inconsistent results of duplicatory litigation." *Hoag v. New Jersey, supra* at 470. In this sense, its purpose is similar to the purpose for the constitutional guarantee against double jeopardy. Logically, it should be protected by the Fifth Amendment.

In *Kramer,* the United States Court of Appeals. Second Circuit, stated at page 913:

Application of the principle inevitably has two phases. The first is to determine what the first judgment determined, a process in which, as the Sealfon case [referring to *Sealfon v. United States, supra*] makes plain, the court must look not simply to the pleadings but to the record in the prior trial. The second is to examine how that determination bears on the second case.

It seems manifest that if the exact issues determined in the former trial are not ascertainable from the record of that trial, or are not necessarily inherent in the verdict of the jury, the doctrine of collateral estoppel may not be invoked. *State v. Peele, supra.*

We must, therefore, ascertain whether or not the jury's verdict of acquittal of the defendant of first-degree murder of Ralph Burdick necessarily established some issue or ultimate fact essential to his prosecution for first-degree murder of Mark Allen Harris or assault with reference to Laila Violet Harris. *See* 142 A.L.R. 1243 (1943).

The prosecuting attorney urges that the acquittal could have resulted because the jury came to the conclusion Ralph Burdick was a scoundrel and deserved the ultimate result rather than an affirmative finding that petitioner did not mail the bomb.

This type of argument was answered by the United States Supreme Court in *Sealfon.* In that case, defendant had been tried and acquitted of the charge of conspiring with another to defraud the United States by means of issuing false invoices. Subsequently, he was charged with and convicted of being an accessory to the substantive charge of defrauding the United States.

In rejecting the arguments similar to those made by the state in the case at bar, the court stated in a unanimous opinion at page 580:

The basic facts in each trial were identical. As we read the records of the two trials, petitioner could be convicted of either offense only on proof that he wrote the letter pursuant to an agreement with Greenberg. Under the evidence introduced, petitioner could have aided and abetted Greenberg in no other way. Indeed, respondent

does not urge that he could. Thus the core of the prosecutor's case was in each case the same: the letter, and the circumstances surrounding it and to be inferred from it, and the false invoices. There was, of course, additional evidence on the second trial adding detail to the circumstances leading up to the alleged agreement, petitioner's participation therein, and what he may have got out of it. But at most this evidence only made it more likely that petitioner had entered into the corrupt agreement. It was a second attempt to prove the agreement which at each trial was crucial to the prosecution's case and which was necessarily adjudicated in the former trial to be non-existent. That the prosecution may not do.

Are we in a position at this stage of the proceedings to determine that the second trial is an attempt to relitigate issues or ultimate facts already necessarily adjudicated in the first trial?

The synopsis of evidence offered at petitioner's first trial is before us with representations by both parties that substantially the same evidence will be asserted in support of both counts of the amended informations to prove that petitioner was responsible for mailing the explosives.

Both counts of the amended informations are premised on petitioner's having on the 10th day of June, 1969 produced injury or death "by placing or causing to be placed in the United States mail a package containing a bomb which was sent to the residence of . . . ".

The information which charged petitioner with first-degree murder in connection with the death of Ralph Burdick was premised on his having on the 10th day of June, 1969 "sent the said explosive bomb to the said Ralph Burdick in the County of Clark, State of Washington . . . ".

The jury instructions, which we may properly review to assist in determining the issues actually litigated (*See Sealfon v. United States, supra.*) submitted that issue to the jury (instruction No. 3) and we note that such issue was the only contested issue in the trial.

The only additional evidence to be introduced at the pending trial is the letter (exhibit 29A) referred to above.

Such additional evidence is not directly germane to the question of whether or not petitioner mailed the bomb but would, if admissible, more clearly show his motive to commit premeditated murder.

It seems to us clear beyond doubt that the jury in the first trial was asked to determine a single question of whether or not petitioner was responsible for mailing the package containing the bomb which killed Ralph Burdick. The jury will be asked in the current trial to determine that same issue on the same testimony but with reference to different victims.

We find no way, in principle, to distinguish this case from *Sealfon v. United States* or *United States v. Kramer*. In the latter case, the court stated at pages 915 and 916:

A defendant who has satisfied one jury that he had no responsibility for a crime ought not be forced to convince another of this, even in a prosecution where in theory, although very likely not in fact, the Government need not have tendered the issue . . . More important, to permit the Government to force a defendant who has won an acquittal to relitigate the identical question on a further charge arising out of the same course of conduct, selected by the Government from the extensive catalogue of crimes furnished it in the Criminal Code, would permit the very abuses that led English judges to develop the rule against double jeopardy long before it was enshrined in the Fifth Amendment . . . The very nub of collateral estoppel is to extend *res judicata* beyond those cases where the prior judgment is a complete bar. The Government is free, within the limits set by the Fifth Amendment, *see* United States v. Sabella, 2 Cir., 1959, 272 F.2d 206, 211, to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; *but it may not prove the new charge by asserting facts necessarily determined against it on the first trial*, no matter how unreasonable the Government may consider that determination to be.

(Italics ours.)

■ Because of the similarity in purpose between double jeopardy and collateral estoppel, when applied to a criminal case, because the record demonstrates without

question that the retrial of petitioner for assault and murder will require relitigation of the same ultimate fact—(did petitioner mail the package containing the explosives?)—we have the view that collateral estoppel applies to prohibit retrial on that issue. Accordingly, the ultimate question raised by the amended informations is barred of retrial and that issue is not properly before the trial court as per *State v. Durham*, 39 Wn.2d 781, 238 P.2d 1201. Our conclusion is that the trial court exceeded its jurisdiction in striking the defense of collateral estoppel and proceeding to trial on that issue. Thus, prohibition will lie.

We feel constrained to give some additional reasons for this view. The state gives no valid reason why petitioner was not originally tried for all three offenses. The argument that the instructions to the jury would have been unduly complicated is not convincing. All three counts, assuming they were tried together, required basically the same proof. To convict on any count would require the jury to find beyond a reasonable doubt that petitioner mailed the explosive package or caused it to be mailed to the residence where the deaths and injuries occurred when it was opened.

We can find no compelling reasons in law or in simple justice, as to why the state should be permitted more than one prosecution for this single act. The name of the particular victim specified in the informations has absolutely no bearing on the issue of the identity of the person who mailed the explosives. The vice of such a procedure lies in relitigating the same issue on the same evidence before two different juries with a man's innocence or guilt (if not his life) at stake. This the state should not be permitted to do.

We notice that the highest court of our sister state of Oregon, in a unanimous en banc decision, has reached the same conclusion on strikingly similar facts. In *State v. George*, —— Ore. ——, 455 P.2d 609 (1969) the defendant had been acquitted of first-degree murder of a victim by discharging a firearm. He was subsequently charged, tried

and found guilty of second-degree murder with reference to a different victim, but arising out of the same altercation. The record of his first trial disclosed that both victims had been killed by one shot.

In ruling that the state was estopped from relitigating the issue of whether or not the defendant fired the shot resulting in the two homocides, the court stated at 455 P.2d 613:

> The instructions and the fact that both men were killed with one shot force us to the conclusion that the issue of whether the bullet was caused to be fired by defendant in a manner to make him criminally responsible for Eggsman's death was necessarily decided in the negative in the first case or he could not have been absolved of criminal responsibility for the death of Kirk.

That case is different from the one at bar only with reference to the stage of the litigation in which collateral estoppel was asserted.

In this case, by virtue of the synopsis of the evidence, the informations, the jury instructions, the representations as to what additional evidence will be presented by the state, we are able (without waiting the expense to the state of a new trial and the attending confinement, anxiety, and expense to the defendant) to determine at this stage of the proceedings that collateral estoppel applies to bar relitigation of the issue essential to the state's case.

Accordingly, a writ of prohibition is hereby issued to the Clark County Superior Court, directing that the amended informations against petitioner be dismissed and that petitioner be thereupon forthwith discharged from custody.[2]

ARMSTRONG, C. J., and PETRIE, J., concur.

---

Petition for rehearing denied April 20, 1970.

---

[2]The result we have reached now appears to be compelled by the United States Supreme Court in a decision filed on April 6, 1970. *See Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970), and collateral estoppel becomes a constitutionally protected doctrine under the Fifth Amendment. Since that decision does not alter the result we have reached, we see no need for modifying this opinion.