**Jimmy Dale KUPIEC, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defend-
ant in Error.**

**Nos. A–16864, A–16879.**

Court of Criminal Appeals of Oklahoma.

Jan. 19, 1972.

Rehearing Denied Jan. 25, 1972.

Andrew T. Dalton, Public Defender, Tulsa County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Ray Parks, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Jimmy Dale Kupiec, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma for the offenses of Robbery with a Firearm and First Degree Rape. His punishment was fixed in the robbery case at a term of not less than twenty (20), nor more than sixty (60), years imprisonment, and his punishment was fixed in the first degree rape case to a term of one hundred and three (103) years imprisonment; from said judgments and sentences, timely appeals have been perfected to this Court. Because of similar issues which are urged in the appeals, the cases have been consolidated for decision.

The evidence in both cases was substantially the same. Jeanetta Stout testified that at approximately 5:00 o'clock on the morning of August 25, 1970, someone rang her doorbell, and hammered at the front door. Answering her doorbell, she observed two persons, one bending over as if in pain. One of the persons said, "Please, Mrs. Stout, I need help, and I want to use your phone." Thinking that it was the paper boy, she opened the front door, and upon discovering that it was not the paper boy, attempted to close the door. The two persons forced their way inside the house, and Mrs. Stout was knocked back over the coffee table. One of the persons said, "Jackie, go get the old man." Each person had a gun in his hand, and one of the persons went to the bedroom and forced her husband back into the living room, hitting, pushing, and dragging him into the room, She and her husband were both beaten, bound, and threatened as they were forced to lie on the floor. The two persons moved throughout the house, taking items of personal property, which were eventually secured in a window drape. She was dragged from the living room into a bedroom by the person whom she identified in court as the defendant. Upon reaching the bedroom, with her hands still bound behind her back, she was forced to submit to an act of sexual intercourse with the defendant. The defendant had the gun in his hand at all times during the intercourse, and threatened to blow her head off.

Sharon Eddy testified that she was a niece by marriage to Mrs. Stout, and that in the early morning hours of August 25, she had a conversation with the defendant and Jack Benjamin concerning the residence of her aunt. They stated that they were going to rob them. At the armed robbery trial, she testified in addition that the defendant and Benjamin returned later that morning with several boxes, jewelry, and a mink stole. They related to her how they gained entrance to the house by pretending to be a paper boy, and that they had robbed her aunt and uncle.

The defendant did not testify, nor was any evidence offered in his behalf at the rape trial; at the armed robbery trial, the only witness called for the defense was Jewel Martin, who testified that she was present in the sheriff's office prior to a line-up being conducted on August 31, and that the defendant and Jack Benjamin were paraded by the Stouts.

The first proposition asserts that the trial court erred in allowing evidence of the rape in the armed robbery case, and the armed robbery evidence in the rape case. We are of the opinion that the evidence of the other crime in both cases was properly admitted, and that the same was part of the res gestae. We further observe that the same would be admissible under the exception to the general rule that when a defendant is put on trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial, is inadmissible. In Moulton v. State, Okl.Cr., 476 P.2d 366, we recently stated:

"However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other."

Defendant further argues under this proposition that the admission of the evidence of the other crime in each case violates the prescription against double punishment for a single transaction, or course of conduct. We are of the opinion that the armed robbery and the rape were clearly separate and distinct crimes. The proof required for a conviction of armed robbery and the proof required for a conviction of rape is quite dissimilar. In the recent case of Tucker v. State, Okl.Cr., 481 P.2d 167, in response to

defendant's contention that double punishment for a single criminal objective and intent, act, or course of conduct amounts to cruel and unusual punishment, the Court said:

"We are of the opinion that the fact the crimes were committed in rapid succession does not negate the ultimate fact that separate crimes were committed. To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one."

The next proposition contends that the trial court erred in instructing the jury that the indeterminate sentence must be given by a factor three times the minimum assessed. This proposition is well taken. However, we are of the opinion that the error is harmless. Title 57 O.S., § 353, provides as follows:

"In all cases where a sentence of imprisonment in the penitentiary is imposed, the court in assessing the term of the confinement may fix a minimum and a maximum term, both of which shall be within the limits now or hereafter provided by law as the penalty for conviction of the offense. The minimum term may be less than, but shall not be more than, one-third of the maximum sentence imposed by the court. *Provided, however, that the terms of this act shall not limit or alter the right in trials in which a jury is used for the jury to assess the penalty of confinement and fix a minimum and maximum term of confinement, so long as the maximum confinement be not in excess of the maximum term of confinement provided by law for conviction of the offense.*" (Emphasis Added)

In the instant case, the jury was instructed that if they saw fit to assess an indeterminate sentence, the minimum term may be less than, but shall not be more than, one-third of the maximum sentence imposed by the jury. This instruction would appear to be beneficial to the defendant, rather than detrimental. Without this portion of the instruction, the jury could have sentenced

the defendant to a term of not less than fifty-nine, nor more than sixty, years. By the court's instruction, the jury was limited, in that if the maximum term was sixty years, the minimum term could have been less than, but not more than, twenty years.

■ The third proposition contends that the trial court erred in allowing the in-court identification after an Evidentiary Hearing. At the Evidentiary Hearing, Mrs. Stout testified on cross examination as follows:

"Q. Mrs. Stout, at any time then before you viewed the pictures, did anyone suggest to you at all who you should pick out?

"A. Oh, no.

"Q. Did anybody make a suggestion as to who—what picture you should pick out?

"A. No.

"Q. At any time prior to the lineup did anyone, did the police officers, or anyone else, suggest which man in the lineup you were to pick out?

"A. No, sir.

"Q. Did they tell you which man's name was Kupiec prior to viewing the lineup?

"A. No, sir.

"Q. Mrs. Stout, is your identification based on what you remember at the time [sic] crime we are dealing with, or at the lineup and the pictures?

"A. I was sure.

"Q. Is your identification based upon what you remember from the time of the crime rather than something you viewed in the lineup or the pictures?

"A. It was at the time of the crime.

"Q. If you had been shown no pictures, if you had seen no lineup, would you have been able to identify him?

"A. I never would forget that face. (Tr. 543–544)

We have carefully considered all the evidence presented at the Evidentiary Hearing, and are of the opinion that the trial court did not err in considering the totality of the circumstances in ruling that the in-court identification was not tainted. See Mallard v. State, Okl.Cr., 490 P.2d 1383.

■ Defendant further argues in this proposition that, although an Evidentiary Hearing was conducted in the armed robbery case, the defendant requested an Evidentiary Hearing in the rape case, and the same was denied. The Record reflects that the following transpired:

"THE COURT: . . . Now with regard to the motion for an evidentiary hearing it is my understanding also in that case a motion was filed and an evidentiary hearing was in fact conducted.

"MR. HOPPER: That is true.

"THE COURT: And the Court ruled in that case that the victim in the case would be permitted to make an in court identification of the defendant. Identification in that case would be the same as the identification in this case. The transcript indicates that she has previously made two in court identifications of the defendant, that is at the preliminary hearing and at the trial of the case. The preliminary hearing of this case, and of the charge of robbery with firearms. So the motion for an evidentiary hearing at this time will be overruled. Exception will of course be allowed.

"MR. HOPPER: Note our exceptions, yes. I would like to add one thing, your Honor, this is one of the basis [sic] for our taking an exception to the Court's ruling is that, as you pointed out, the rulings made in the previous case, the robbery case, are being used against the defendant in this case, and we feel that he is being denied a fair, impartial trial, and that his Constitutional rights are being violated, both his Federal Constitutional rights and his rights guaranteed under the Constitution of the State of Oklahoma. He is being denied a fair and impartial trial, and we would ask that the Court reconsider its former ruling overruling our motion to dismiss.

"THE COURT: Well, of course, I will have to hear the evidence in the case here

before I could conclusively determine that you would be entitled to an evidentiary hearing on that question. From the transcript of the preliminary it indicates that positive identification, positive in court identification has in fact been made, and was in fact made. The District Court of Tulsa County has previously ruled that there was no tainting as a result of the line up identification of the defendant in this case, and I don't think that that matter needs to be adjudicated twice, or you would have two hearings on the same question.

"MR SHAFFER: Also at the trial, your Honor, the matter was gone into by Judge Martin in an evidentiary hearing at that time.

"THE COURT: Yes, all right. (Tr. 108–109)

The Record does not reflect that the defendant again requested an Evidentiary Hearing prior to the in court identification. We observe that the defendant was afforded an Evidentiary Hearing, wherein it was ascertained by the trial court that the witness Stout's identification of the defendant was not tainted. We further observe that the defendant does not recite in his brief that additional witnesses were available whose testimony would have altered the trial court's findings as to the identification. We, therefore, conclude that the trial court's refusal to grant an Evidentiary Hearing in the rape case, if error, was harmless.

■ The next proposition asserts that in the armed robbery case the court erred in allowing the co-defendant to enter a plea of guilty during the course of the proceedings, advising the jury that the co-defendant's guilt or innocence was no longer a matter for their consideration, and in failing to postpone the answering of the plea until the close of the case. We observe that during the course of the trial, Jack Benjamin, who was being tried jointly with the defendant, entered a plea of guilty outside the presence of the jury. The trial court was, thus, placed in a position of having to explain to the jury why Benjamin was no longer in the courtroom. The Court stated:

"I want to advise you at this point that the question of guilt or innocence of the defendant Benjamin is no longer for your consideration; you will have for your consideration only the guilt or innocence of the defendant Kupiec. I would like to inquire at this point of the entire panel if any of you have heard anything about the case, or read anything about the case since its inception."

The trial court then polled the jury, all of whom replied in the negative. Although this proposition is improperly before this Court, in that the defendant failed to cite authorities, we are of the opinion that the trial court's comments to the jury were not improper under the circumstances.

■ The final proposition asserts that the punishment is excessive. We have consistently held that we do not have the power to modify a sentence, unless we can conscientiously say that under all the facts and circumstances, the sentence is so excessive as to shock the conscience of this Court. Roberts v. State, Okl.Cr., 473 P.2d 264. From the foregoing statement of facts, we are of the opinion that the evidence of defendant's guilt is overwhelming, and that the defendant richly deserves the punishment imposed. The judgments and sentences are

Affirmed.

BRETT, J., specially concurs.

SIMMS, J., concurs.

BRETT, Judge (specially concurring).

While I agree with my colleague that the defendant richly deserves the punishment imposed in the judgments and sentences herein, I believe that the charges should have been consolidated into one Information under separate counts. There can be no doubt but that this series of acts occurred in one transaction, or one course of events. These two appeals were consolidated because the evidence was the same and in the terms of the majority opin-

ion, "Because of similar issues which are urged in the appeals, the cases have been consolidated for decision." If this Court is justified in consolidating these opinions for the reasons stated herein, then the trials on the separate charges should have been accomplished under one information with separate counts listed therein. It is sheer folly to claim that the courts are being bogged down by trials and appeals when the district attorneys persist in filing separate informations, when one information would serve the same purpose.

I believe the proper administration of justice would at least warrant the making of these sentences to run concurrently, and if time permitted, I would write a dissertation to warrant such position. However, under existing conditions such becomes extremely difficult. I believe the sentences are excessive as they are outlined in this opinion, and because of the dual prosecution, these sentences do shock my conscience, notwithstanding the provisions of Roberts v. State, supra. But being in the minority and feeling that the defendant is entitled to severe punishment, I am bound to concur in the results of this decision insofar as it affirms the conviction, but I reserve my exceptions as briefly stated herein.