Vernice Martin MORGAN, Petitioner,

v.

Raymond W. GRAHAM, Presiding Judge, and
Robert F. Martin, District Judge, State
of Oklahoma, Respondents.

No. A–17331.

Court of Criminal Appeals of Oklahoma.

April 26, 1972.

Ed Crockett, Public Defender, Tulsa County, for petitioner.

S. M. Fallis, Jr., Dist. Atty., Ted Flanagan, Asst. Dist. Atty., Tulsa County, for respondents.

## OPINION

SIMMS, Judge:

This is an original proceeding in which the petitioner, Vernice Martin Morgan, an indigent, the defendant in Case Number CRF–72–218, charged with Robbery with a Dangerous Weapon in the District Court of Tulsa County, Oklahoma; seeks a Writ of Mandamus to require the District Court of Tulsa County to furnish him with a free transcript of his preliminary hearing.

Authority was presented in support of the petition, the State filed a response to the petition and oral arguments were had before this Court on April 5, 1972, after which the Court took the matter under advisement.

Petitioner cites as supporting authority the cases of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Waters v. State, Okl.Cr., 454 P.2d 325 (1969); and, in his oral argument, Hawkins v. State, Okl.Cr., 486 P.2d 743 (1971).

Initially, a distinction must be made as to what stage of the proceedings and the purpose for which a transcript is sought. *Griffin*, supra, the watershed of all free transcript cases, and its progeny deal for the most part with transcripts sought for the purposes of appellate review. Okla-

homa has a statute which controls in that instance. Title 20, O.S.1971, § 106.4(b), states in pertinent part:

" * * * In a criminal action, if the defendant shall present to the judge his affidavit that he intends in good faith to take an appeal in the case and that a transcript of the reporter's notes is necessary to enable him to prosecute the appeal, and that he has not the means to pay for the transcript, the court, upon finding that there is reasonable basis for the averment, shall order the transcript made at the expense of the county court fund. * * * "

In the instant case, the record reflects that petitioner requested a preliminary hearing transcript for the purpose of preparing for trial but in response to a question from the court as to whether or not it was required for the purpose of filing pre-trial motions, the defendant answered in the negative, and the trial court denied the request for the transcript. We note that the form pleadings requesting transcripts in forma pauperis filed in this case both indicate that the transcript in question was being sought for the purpose of filing pre-trial motions on behalf of the defendant.

*Hawkins* and *Waters,* supra, both reaffirm the proposition that statutes which require the payment of a fee for a preliminary hearing transcript by indigents, applied in a situation to deny a free transcript to an indigent, violate the equal protection clause of the Federal Constitution. *Hawkins,* supra, goes further and indicates that where a defendant makes a timely request for a preliminary examination transcript at public expense in order to prepare for trial and then is denied same by the judge, that the proper remedy is to seek a Writ of Mandamus in this Court as was done in this case. However, the *Hawkins* case does not reach the question which appears to be before the Court in this case, that is as to whether or not there may be an adequate substitute for a preliminary hearing transcript as counsel for the defendant admitted in oral argument.

As we view the free transcript situation, the issue of whether an indigent state prisoner is entitled to a free transcript, unconditionally, as a matter of constitutional right has never been directly decided by the Supreme Court of the United States. The majority opinion in Harris v. State of Nebraska, D.C., 320 F.Supp. 100 (1970), held that there were circumstances wherein the state court could require a prior showing of need before providing a transcript at public expense. The same question appeared in a Sixth Circuit case decided the preceding day, September 2, 1970; Bentley v. United States, 431 F.2d 250 (1970, Court of Appeals, Sixth Circuit), wherein that court noted that the question of whether the Federal Constitution gives a defendant the unqualified right to a transcript at government expense was still undecided. A line of cases was cited to indicate that the court had previously required a prior showing of need and the court concluded that if the United States Supreme Court now desires to hold that a prior showing of need cannot constitutionally be made a requisite for a free transcript for an indigent, that this case (Bentley) affords a wholly appropriate vehicle to do so. Bentley sought to have the question certified, but the Supreme Court at 401 U.S. 920, 91 S.Ct. 907, 27 L.Ed.2d 823 (1971), on the 22nd day of February, 1971, denied Certiorari on that question.

*Griffin,* the basic case in this area, states the fundamental proposition that to interpose any financial consideration between an indigent prisoner of the state and his exercise of the right to sue for his liberty is to deny that person equal protection of the laws. *Griffin* did not hold, however, that the state must buy a stenographers transcript in every case where the defendant cannot. Quite the contrary, *Griffin* held that other means could be used. In the dissent, four Justices questioned the wisdom of the majority holding that the Constitution prescribes the method of affording such transcripts for indigents in all state courts.

The next major free transcript case is Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). *Draper,* supra, held that rather than providing a transcript, any other method could be used by the state so long as the defendant received a record of sufficient completeness to guarantee proper consideration of his claim.

The *Roberts* case, supra, which is the foundation for the Oklahoma decisions in *Hawkins* and *Waters*; the decision turned upon a statute which imposed a financial burden on indigents that was not imposed on those who could afford a transcript. In *Harris,* supra, the court pointed out that *Roberts* does not hold an indigent state prisoner is entitled to a transcript to his preliminary hearing, irrespective of the intended use by the prisoner or defendant.

Since the cases have determined on the one hand that defendants are not always entitled to a free transcript, we must look to the other end of the scale where we find in the latest cases statements made by the Supreme Court which indicate that to require an indigent to make a "particularized showing of need" for a transcript is constitutionally suspect. Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).

In *Britt,* supra, cited in December, the Court held that an indigent must be provided with a transcript when it is needed for effective defense or appeal, and that the issue was whether the trial court properly determined that a transcript was not needed in that case. The *Britt* decision outlines two factors which are relevant to the determination of needs: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and, (2) the availability of alternative devices that would fulfill the same functions as the transcript.

On the same day in December, the Supreme Court also decided Mayer v. Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), and held that a "record of sufficient completeness" does not translate automatically into a complete verbatim transcript and indicated that narrative statements, agreed statements of fact, and other types of recordings can be used as suitable alternatives. The burden to show that an "alternative" will suffice is on the state.

The rationale behind these cases indicate that the United States Supreme Court is not willing to totally reject legitimate state interests in avoiding needless and useless fiscal outlays for transcripts.

Mr. Chief Justice Burger, concurring in *Mayer,* supra, wrote:

"Every busy court is plagued with excessive demands for free transcripts in criminal cases. My own experience over the years indicates that privately employed counsel are usually spartan in their demands because the client must pay his own costs. Unfortunately one consequence of the advent of the Criminal Justice Act and state counterparts is that when costs are paid by the public, counsel are sometime profligate in their demands, or yield their professional judgment to the client's desires. This is more than a matter of costs. An affluent society ought not be miserly in support of justice, for economy is not an objective of the system; the real vice is the resulting delay in securing transcripts and hence determining the appeal. When excessive demands are made by an appellant in order to postpone the day when the appeal is finally determined, because, for example, he is at liberty pending appeal, a lawyer who cooperates is guilty of unprofessional conduct.

I quite agree with Mr. Justice Brennan that 'a full verbatim record where that is necessary . . .' should be provided but judges and lawyers have a duty to avoid abuses that promote delays."

We conclude, therefore, that while the indigent defendant cannot be required to carry the burden of "particularized need," neither the court nor the state can be criticized for taking appropriate steps to determine the value of such requested tran-

script in connection with the appeal or trial for which it is sought, and the availability of alternative devices.

In short, an indigent defendant is not entitled to a free transcript as a matter of course, and certainly not where it is being sought as a matter of trial tactics for the purpose of delay.

If the state can show a tape recording or some similar device will serve the same purpose at less cost, then it should be given the opportunity to so show. This would also indicate that petitions in forma pauperis for free transcripts should be drafted with care and an eye to the circumstances of each case.

We are informed by counsel in this particular case that in the Tulsa County courthouse, dictabelts are maintained by the court reporters in each courtroom, and counsel for the defendant indicates that if he were given an opportunity to listen to these dictabelts, it would provide the same information as would a full transcript of the proceedings had. If this is the case in Tulsa County, and perhaps elsewhere, this Court can foresee many instances in which such dictabelts would provide easy access to the needed information without any additional expense on the part of the state and would also guarantee that the defendant would have that opportunity to prepare what defense can be prepared from a preliminary hearing. Costs to the state, while no yardstick of a defendant's rights or the price of those rights, is still a practical consideration.[1]

Writ granted in part, and denied in part. This matter is remanded for an evidentiary hearing to determine the value of the transcript to the defendant in connection with the case for which it is sought and the availability of alternative devices which would fulfill the same function as a transcript.

BUSSEY, P. J., concurs.

BRETT, J., concurs in result.

---

1. State Court Administration figures reflect that more than a quarter of a million dollars has been spent for court ordered transcripts in criminal cases since 1968. In 1968 nearly $50,000.00 was spent for transcripts alone, and the 1971 figure, $95,484.70, is more than double the amount requested some four years ago.