**Paul Eugene GRUBB, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**Nos. A–17010, A–17228.**

Court of Criminal Appeals of Oklahoma.

May 17, 1972.

As Amended May 18, 1972.

Rehearing Denied June 22, 1972.

Andrew T. Dalton, Jr., Appellate Public Defender, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Frank Muret, Legal Intern, Ray Parks, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Paul Eugene Grubb, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma for the offenses of Robbery with Firearms and Kidnapping. His punishment was fixed in the Robbery case at a term of not less than ten (10)

years, nor more than fifty (50) years imprisonment, and his punishment was fixed in the Kidnapping case to a term of seven (7) years imprisonment, and from said judgments and sentences, timely appeals have been perfected to this Court. Because of similar issues which are urged on appeal, the causes have been consolidated for a decision at the request of the defendant.

At the trial, Gary Haney testified that on February 2, 1971, he was living with his sister and brother-in-law, Lana and Larry Sander, in Collinsville, Oklahoma. Another sister, June Lynette Murphy, was also staying at the same address. At approximately 8:00 o'clock p. m., the defendant came to the residence, and displayed a gun; he said that he was going to take Lynette Murphy. Gary Haney and the defendant talked in the living room for approximately 45 minutes, during which period the defendant was sniffing glue from a wash rag. At approximately 9:30 p. m., Lynette, Lana and Larry arrived at the residence. Defendant told Lynette that he wanted to talk with her, and they went into the bedroom. Shortly thereafter, they came out of the bedroom and the defendant entered the living room, pulled out his gun, and told everybody to "come in and sit down on the couch." Defendant stated that if Lynette did not go with him, he would kill them all. Lynette stated that she would not go, and defendant ordered Larry to stand up against the wall, stating that he was going to shoot him. Lynette became "kind of shook up," and agreed to go with him. Defendant asked Larry if he had any money, and Larry replied that he had Three Dollars ($3.00). Defendant ordered Larry to put the money and his driver's license on the floor. Defendant picked up the money and the driver's license, and left with Lynette, stating that he would kill her and himself if they called the police. Defendant took Miss Murphy from the house, but they returned in approximately 30 seconds, with defendant still pointing the gun and demanded that Larry give him his car keys. Larry gave them the keys,

and the defendant and Lynette left in Larry's car.

Lana and Larry Sander's testimony did not differ substantially from that of the witness, Haney.

June Lynette Murphy testified that she had lived with the defendant in a trailer in Collinsville from September to the end of January. They split up, and she moved to her sister's home, Lana Sander, approximately a week before the incident. On the evening in question, she, her sister, and her brother-in-law had been in Tulsa, Oklahoma shopping. When they arrived at the residence, defendant was sitting in the living room, and stated that he wanted to talk with her. They went to the back bedroom, and the defendant asked her if she was going with him. She replied that she was not going to go with him anywhere, and the defendant then stated, "Well, we'll see about that," and pulled a gun. Defendant then ordered her, Gary Haney, and Lana and Larry Sander into the living room. Defendant ordered them to all sit up on the couch, and he kept walking back and forth, pointing the gun and sniffing a red wash cloth which had glue poured onto it. Defendant then asked her if she was going to go with him, and she replied, "No." Defendant ordered Larry to stand up and said that if she did not go, he was going to shoot Larry. She jumped up between them and began pleading with the defendant not to shoot, and agreed to go with him. Defendant, still pointing the gun at Larry, asked him if he had any money and told him to throw it on the floor. Defendant picked up the money, and they proceeded out the door. Defendant then decided that he wanted to take Larry's car, and they returned to the house. Defendant pointed the gun at Larry and said, "Give me your keys, I'm going to take your car." At the Kidnapping trial, she testified that they drove around for some time, and eventually headed back toward Claremore, Oklahoma. During this period of time, the defendant kept the gun on his lap and pointed at her several times. They were stopped by two police officers

who came up to their car (the defendant's car) with their guns drawn. The defendant pointed the gun at her head and told the officers that they had better put their guns down or he would kill her. The police officers complied with the defendant's request and she and the defendant got out of the vehicle. Defendant then shot the radio out of one of the police officer's cars and threw the keys to the car in a ditch. Miss Murphy and the defendant got into the police car and left. They were pursued by other police officers and the defendant eventually drove into a yard and they entered a house. The woman who owned the house was permitted to go outside. The police officers turned on a loud speaker and told the defendant to come out. Miss Murphy tried to get the defendant to give up, and he refused. A police officer came into the house and attempted to talk with the defendant, but the defendant stated that he "wanted time to think about it." The police officer returned and the defendant fired a shot, stating, "I told you guys to stay out of here." The police officers subsequently fired tear gas into the house and subdued the defendant.

Leonard McMillan and Paul Steelye testified that they were volunteer police officers for the Rogers County Sheriff's Office. On the evening in question, they were patrolling the area in separate vehicles. After receiving a radio call about a purported kidnapping, they observed a vehicle meeting the description. McMillan turned on his red light and chased the defendant for approximately four miles at 90 miles per hour. Defendant stopped broadside in the road, and he and Officer Steelye approached the vehicle. The defendant stuck a gun to the girl passenger's head and told the officers to "get back," or he would kill them. The officers backed up, and the defendant, Grubb, and the girl got out of the vehicle, the defendant pointing a gun at her back. The defendant fired a shot into the radio in Steelye's vehicle, and another shot into McMillan's spotlight. The defendant and the girl left in Officer McMillan's vehicle.

The defendant did not testify in the Robbery case. At the Kidnapping case, the defendant testified that he and Lynette Murphy lived together as husband and wife for one month in California and from October until February 1, in Collinsville. They agreed to split up on February 1, and she moved out of the trailer. On the evening in question, he went to the Sander residence to borrow Fifteen Dollars ($15.-00) from Lynette. He testified that he took the gun into the house because if Lynette did not loan him the money, he was going to kill himself. He testified that he did not intend to hurt anybody that evening. On cross examination, he admitted sniffing glue, but testified that glue did not make him "high." He admitted a prior conviction for Burglary in the Second Degree in California. Defendant testified that he did point the pistol at Larry Sander, but did not intend to hurt him. He denied pointing the pistol at Lynette's head and threatening to kill her if the police did not back up. He further testified that he told them that the gun might go off if they shot him. Defendant stated that he did not intend to kidnap Lynette, but in response to the following question: "Did you kidnap her, yes or no?" he answered, "Yes." (Tr. 115) He further testified in response to the following questions:

"Q. Do you think it was right of you to forcibly seize and kidnap Lynette Murphy from that home on that night?

"A. No, I don't.

"Q. Do you think you should be punished for that?

"A. Yes." (Tr. 122–123)

Defendant first argues that since he was convicted of the offense of Robbery that the subsequent prosecution for Kidnapping constituted double jeopardy, or double rapping. In dealing with a similar proposition in the recent case of Kupiec v. State, Okl.Cr., 493 P.2d 444, wherein the defendant was convicted of Armed Robbery and Rape, we stated:

"Defendant further argues under this proposition that the admission of the evi-

dence of the other crime in each case violates the prescription against double punishment for a single transaction, or course of conduct. We are of the opinion that the armed robbery and the rape were clearly separate and distinct crimes. The proof required for a conviction of armed robbery and the proof required for a conviction of rape is quite dissimilar. In the recent case of Tucker v. State, Okl.Cr., 481 P.2d 167, in response to defendant's contention that double punishment for a single criminal objective and intent, act, or course of conduct amounts to cruel and unusual punishment, the Court said:

'We are of the opinion that the fact the crimes were committed in rapid succession does not negate the ultimate fact that separate crimes were committed. To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one.' "

In the instant case, we are of the opinion that the Robbery and the Kidnapping were separate and distinct crimes. Kidnapping did not commence until the completion of the Armed Robbery. Likewise, the proof required for the conviction of Robbery and the proof required for the conviction of Kidnapping is quite dissimilar. We, therefore, find this proposition to be without merit.

■ The next proposition contends that the court erred in instructing the jury on the indeterminate sentencing provisions of the statutes of Oklahoma. The Record reflects that the defendant specifically stated that he had no objections to the instructions, nor did he have any additions thereto. In Schapansky v. State, Okl.Cr., 478 P.2d 912, we stated:

" 'Where counsel is not satisfied with instructions that are given, or desires court to give any particular instruction, or to more definitely or sufficiently state any propositions embraced in instructions, it is the duty of counsel to prepare and present to the court such desired instructions and request that it be given, and in absence of such request [Court of Criminal Appeals] will not reverse case if instructions generally cover subject matter of inquiry.' "

Although this proposition is improperly before this Court, we have examined the instructions and are of the opinion that the instructions would appear to be beneficial to the defendant, rather than detrimental. This Court discussed an identical instruction in Kupiec v. State, supra. We, therefore, find this proposition to be without merit.

■ The final proposition asserts that the punishment is excessive. We have consistently held that we do not have the power to modify a sentence, unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of this Court. Roberts v. State, Okl.Cr., 473 P.2d 264. From the foregoing statement of facts, we are of the opinion that the evidence of defendant's guilt is overwhelming, and that the defendant richly deserves the punishment imposed. The judgments and sentences are affirmed.

BRETT, J., concurring in part; dissenting in part, BARNES, J., Special Judge, concurring.

BRETT, Judge (concurring in part and dissenting in part):

I would affirm the armed robbery conviction, with modification; but, I would reverse the kidnapping conviction for the reason it is in violation of 21 O.S.1971, § 11, under the circumstances of these appeals. I believe further that the two charges should have been filed as separate counts in one information under the provisions of 22 O.S.1971, § 404, because they arose out of a single transaction. I offer the same objections to this decision that I offered in Kupiec v. State, Okl.Cr., 493 P. 2d 444 (1972). I agree that the statute is permissive, as argued by my colleague; and I agree that the crimes of rape and

armed robbery are separate and distinct offenses, but under the circumstances of these appeals insofar as they arose out of a single transaction they should have been tried at one time as separate counts.

It is expected that this Court will provide some guidance in the proper administration of criminal justice, but so long as we continue to allow the stacking of offenses—as was done in these cases—we are failing to provide that expected guidance. Instead, we are permitting the district attorneys to tell the courts how they will prosecute offenses, regardless of the circumstances involved. As I stated in *Kupiec*, supra, for the very same reason this Court is justified in consolidating these appeals into one decision, the district attorney should have been required to have consolidated them under separate counts in one information.

In most instances wherein the Public Defender lodges the appeal, as in these two appeals, the record is prepared at state expense. We are informed by the Court Administrator that those costs continue to mount. See this Court's decision in Morgan v. Graham, Okl.Cr., 497 P.2d 464 (1972), footnote one, for a statement of costs paid by the state for transcripts of trials. Consequently, disregarding entirely the long standing legal authority for not permitting the prosecutors to carve out numerous charges from one set of circumstances, the economic facts seem to me to justify a reimposing of the requirements authorizing consolidation of offenses, when the same testimony will support both charges. See: Estep v. State, 11 Okl.Cr. 103, 143 P. 64 (1914).

Therefore, I concur in that part of this decision which affirms the conviction for armed robbery; but, I respectfully dissent to that part of this decision which affirms the kidnapping conviction, as being in violation of the double jeopardy provisions of the Constitution.