Joseph Austin SUITS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16696.

Court of Criminal Appeals of Oklahoma.

March 21, 1973.

Rehearing Denied April 3, 1973.

Andrew T. Dalton, Jr., Tulsa, for appellant.

Larry Derryberry, Atty. Gen., and Paul Crowe, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Joseph Austin Suits, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Case No. CRF–70–523, for the crime of Robbery With Firearms. He was sentenced to serve a term of not less than thirty (30) years and no more than ninety (90) years in the state penitentiary, in accordance with the verdict of the jury; and a timely appeal has been perfected to this Court. Judgment and sentence is affirmed.

Briefly stated, the facts are:

The State's testimony showed that several preliminary proceedings were had prior to trial. On June 15, 1970, defendant was ordered committed for observation. Subsequently, defendant requested a jury trial to determine his sanity, in order to determine whether or not he was capable of aiding his attorneys in his defense.

On November 2, 1970, a sanity trial was conducted with a jury present. Defendant produced two doctors who testified that their experiences and, tests with the defendant indicated that the defendant was presently insane and dangerous. He was diagnosed as psychotic and suffering from a psychosis of paranoid schizophrenia. He was further described as incapable of understanding the nature of the charge and unable to assist counsel and to appreciate the consequences of punishment.

The State called as its first witness Dr. Peterson, who testified that at one time he had though Suits to be insane and wrote a letter to the court indicating such, but subsequently he changed his mind stating that Suits was sociopathic and a malingerer. Dr. Peterson then controverted the conclu-

sions reached by defendant's two doctors. He testified that Suits escaped from the hospital, but was later returned and at that time he reconsidered his diagnosis of insanity and changed it to that of defendant being presently sane.

The State also introduced into evidence portions of a transcript taken on September 24, 1970, where some preliminary motions were made. The defendant actively participated in the hearing, and so the State contended that was evidence that the defendant could aid counsel in his own defense.

The State called Deputy Sheriff Bill Baker, who testified that on September 29, 1970, he took defendant to a location in Tulsa, according to directions given by defendant, searching for a witness that might aid defendant in his defense. According to Deputy Baker, the defendant was not able to locate the residence.

After all the evidence was submitted, the jury returned a "ten to two" verdict of sanity. Defendant's motions for directed verdict and judgment N.O.V. were denied as were his objections to the instructions.

With the jury verdict of sanity rendered, criminal prosecution was commenced. In November, 1970, defendant was brought to trial on the charge and convicted from which this appeal has been perfected.

At the trial, defendant entered a plea of "insanity on the date of the crime," as his defense. The operative facts concerning the commission of the offense are substantially uncontroverted. The State produced evidence by the victim, Mary Walker, that she was robbed, shot and sexually molested by the defendant. Defendant was identified by her and also by a fellow worker. Police officers related circumstances surrounding the arrest and certain items of evidence, such as a gun and clothing, which were introduced into evidence.

In his defense, defendant produced evidence as to his insanity. He called the two doctors used at his sanity trial whose testimony was substantially the same as that given at his sanity hearing.

Defendant also called his father and his stepmother. They both told of defendant's lack of early home life, of his mother's institutionalization and of the many occasions defendant had been in mental hospitals in several states, since the age of fourteen.

Defendant also presented, by way of offers of proof, medical testimony consistent with other tests for insanity. His offers of proof were overruled by the court.

Defendant also testified in his own behalf. Defendant's testimony was a long oration of his life, but was supportive of the facts concerning the commission of the acts constituting the offense for which he was charged. He testified that he did not know why he pulled the gun on Mrs. Walker and that he shot her because she started screaming.

The State called in rebuttal Dr. Peterson whose testimony was substantially the same as in the sanity trial. The State also introduced, in rebuttal, the Tulsa County Jury Verdict of sanity, which was admitted into evidence by the court over defendant's objections with exceptions allowed. Prior to this, however, defendant introduced into evidence a verdict of not guilty by reason of insanity in a Texas court of September 30, 1957, rendered ten years prior to the commission of the act for which defendant was being tried.

The jury was being instructed and returned a verdict of guilty as charged and assessed an indeterminative sentence of not less than thirty (30) years, nor more than ninety (90) years in the state penitentiary.

In his first proposition of error, defendant alleges that the trial court erred in failing to allow testimony relative to all tests for legal incapacity; and in failing to give the instructions requested by defendant pertaining to those tests; and in overruling objections to pertinent instructions as given to the jury, pertaining to the issue of sanity.

Defendant seeks to broaden the Oklahoma rule concerning the test of sanity by including along with the present rule, con-

sideration of the American Law Institute Test.

▆▆ By defendant's own admission, the M'Naghten rule is the present and exclusive test in this State to determine the question of sanity. Kobyluk v. State, 94 Okl.Cr. 73, 231 P.2d 388 (1951), Gonzales v. State, Okl.Cr., 388 P.2d 312 (1964). It is not the desire of this Court to abandon that rule, at this time; and therefore, we hold the trial court properly omitted defendant's requested instructions and evidence tending to broaden the present rule.

In his second proposition of error, defendant asserts that the trial court erred in instructing the jury that the indeterminative sentence must be given by a factor three times the minimum assessed.

The instruction in question reads in part:

"* * * (U)nder the terms of the indeterminate sentence law, the minimum term assessed by you may be less than, but shall not be more than, one-third of the maximum sentence imposed."

Title 57 O.S.Supp.1970, § 353 provides:

"In all cases where a sentence of imprisonment in the penitentiary is imposed, the court in assessing the term of the confinement may fix a minimum and a maximum term, both of which shall be within the limits now or hereafter provided by law as the penalty for conviction of the offense. The minimum term may be less than, but shall not be more than, one-third of the maximum sentence imposed by the court. *Provided, however, that the terms of this act shall not limit or alter the right in trials in which a jury is used for the jury to assess the penalty of confinement and fix a minimum and maximum term of confinement, so long as the maximum confinement be not in excess of the maximum term of confinement provided by law for conviction of the offense.*" (Emphasis added)

▆▆ In a close analysis of the emphasized portion of 57 O.S.Supp.1970, § 353, it clearly shows that a jury may fix any indeterminate sentence it desires with the only restriction being, that the maximum sentence does not exceed the maximum sentence that can be imposed by law. It has been held that a five (5) year minimum and a ten (10) year maximum indeterminate sentence was well within the boundaries of this statute. Snake v. Page, Okl.Cr., 486 P.2d 762 (1971).

Defendant's contention that it was error for the trial court to instruct that the indeterminate sentence must be given by a factor three times the minimum assessed was discussed in a late Oklahoma case, Kupiec v. State, Okl.Cr., 493 P.2d 444 (1972). In this case, the court said in its opinion:

"In the instant case, the jury was instructed that if they saw fit to assess an indeterminate sentence, the minimum term may be less than, but shall not be more than, one-third of the maximum sentence imposed by the jury. This instruction would appear to be beneficial to the defendant, rather than detrimental. Without this portion of the instruction, the jury could have sentenced the defendant to a term of not less than fifty-nine, nor more than sixty, years. By the court's instruction, the jury was limited, in that if the maximum term was sixty years, the minimum term could have been less than, but nor more than, twenty years."

This Court in *Kupiec*, found the instruction to be harmless and so find it here.

Defendant alleges in his third proposition of error, that the trial court erred in allowing the State to introduce into evidence the Tulsa County Jury Verdict of sanity, contending that it was totally irrelevant because it was based upon a standard other than that in issue; and thus, it had no probative value.

▆▆ Defendant cites two cases to support this contention, Davis v. State, Okl. Cr., 300 P.2d 1000 (1956); Bingham v. State, 82 Okl.Cr. 5, 165 P.2d 646 (1946). This Court has reviewed these cases and find that they have no relevancy to the

proposition of error alleged here, and that they merely ascertain that the defendant was entitled to a jury trial to determine sanity. This was not the issue herein; and therefore, the defendant cites no satisfactory authority in support of this allegation. It is therefore improperly before this Court for consideration and we will not search the vast amount of law to try and find merit in the defendant's proposition. Sandefur v. State, Okl.Cr., 461 P.2d 954.

Therefore, having considered the defendant's assignments of error, and finding them to be without merit, we conclude that the judgment and sentence should be, and the same is hereby, affirmed.

BLISS, P. J., and BUSSEY, J., concur.