**Arthur MOTON, Appellant.**

**v.**

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Appellee.**

**No. 73–1109.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1973.

Decided Dec. 17, 1973.

James A. Jablonski, Washington U. School of Law, St. Louis, Mo., for appellant.

Neil MacFarlane, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before GIBSON and BRIGHT, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

This case comes to us on a certificate of probable cause issued by Judge Regan of the United States District Court for the Eastern District of Missouri after denial of habeas corpus relief to the appellant. Jurisdiction is based upon 28 U.S.C. § 2253. The case has had extensive prior history, appellant's argument, here presented, having been considered, and rejected, by the Circuit Court of the City of St. Louis, by the Supreme Court of Missouri, by the United States District Court for the Eastern District of Missouri.

The record discloses that on June 14, 1970, appellant Arthur Moton and one Charles Robinson accosted two attendants, Welton Rideout and Calvin Cook, at a gasoline service station in St. Louis, Missouri. Robinson held the men at gunpoint and demanded and obtained money from Rideout. Meanwhile, Moton relieved Cook of his money changer and took money from a desk in the station. Both appellant and Robinson were apprehended soon after fleeing the station.

On July 10, 1970, an information was filed against appellant, charging him with the first degree robbery by means of a deadly weapon of attendant Rideout, and, in a second information, with

---

* Hon. Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

the first degree robbery by means of a deadly weapon of Cook. Appellant was found guilty of the robbery of Rideout on August 26, 1970, and sentenced to 12 years' imprisonment. Subsequently, appellant was tried and convicted on the charge of robbing Cook, and sentenced to a term of 15 years in prison, to run consecutively with the 12-year term imposed for the first conviction.[1]

Appellant appealed both convictions to the Supreme Court of Missouri, which rejected a double jeopardy argument in affirming both convictions, State v. Moton, 476 S.W.2d 785 (Mo.1972), after full consideration of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) upon which appellant herein strongly relies. Appellant then sought federal habeas corpus relief, denied by Judge Regan below.

Appellant's argument, succinctly stated, is that separate charges arising out of the same episode must be tried together, "regardless of the number of violations of law, as long as they all arose in the same episode." To try the defendant successively, then, for the robbery of Rideout, and then of Cook, as to neither of which offenses, we note, does he assert his innocence, placed him, he argues, in double jeopardy, in violation of the U.S.Const. Amend. V, made applicable to the states by the Fourteenth Amendment.

The premise presented seems to be that a defendant, who has committed, in one episodal tour of violence a series of unlawful acts, such as rape, robbery, and kidnapping is somehow better off if the entire series is presented to the jury at one time, rather than possibly in successive trials. Granting that the problems presented admit of no easy solution, and that any solution is susceptible to abuse, we are not persuaded by appellant that such a rule would best serve either the defendant's advantage, or that of the public. With respect to a defendant he may well feel, for example, and with reason, that to put before the jury both an armed robbery and a kidnapping would enhance his chances of conviction on both, even though the proofs on one alone might, in the judgment of some, be weak. The repetitive motions we get for severance of defendants and offenses bear witness that our reservations in this respect are not without pragmatic support. The public, moreover, has a profound interest in seeing the guilty convicted as well as the innocent acquitted and to the extent that complexity of issues in a series of crimes may tend to confuse a jury it is doubtful indeed that such a procedure should reach the status of a constitutional mandate.[2]

It is against this background of opposing policy considerations that we proceed to the issue before us. In its resolution we see no need to review the development of the interpretation of and the tests for the word "offense" in the double jeopardy clause, in view of its recent exegesis in the *Ashe* case, *supra*, following the decisions in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) and Hoag v. New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L. Ed.2d 913 (1958), voluminous treatments by legal scholars ("There has been enough written about double jeopardy to satisfy the most avid scholar"[3]), and consideration both by the American Law Institute[4] and in the ABA Mini-

---

1. We are unconvinced by the state's contention that it was required to try the cases separately by Rule 24.04, V.A.M.R. Such rule was not followed if defendant failed to object to the state's consolidation of charges, State v. Terry, 325 S.W.2d 1 (Mo. 1959). Moreover, the rule obviously could not justify violation of a defendant's constitutional rights, should such occur.

2. See Collateral Estoppel, 49 N.Car.L.Rev. 351 (1971).

3. Justice Schaefer of the Supreme Court of Illinois, "Unresolved Issues in the Law of Double Jeopardy," 58 Calif.L.Rev. 391 (1970).

4. Model Penal Code § 1.07(2), "[A] person shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of commencement of the first trial."

mum Standards for Criminal Justice §§ 1.1 and 1.3, the latter providing that a defendant may make a timely motion for joinder of all charges against him.

There is no doubt that the problems presented in this area of multiple offenses are difficult and challenging, but we do not believe that the "same evidence" test [5] (for "offense") has been supplanted by the "same transaction" test,[6] the former remaining the test to be applied save under such circumstances as may fairly come within the collateral estoppel doctrine of the *Ashe* case.

The *Ashe* case, as here, involved the problem of successive criminal trials. On its facts it is similar to the case before us. Appellant Ashe was arrested for the robbery of five men at a poker game. As in our case, he was tried in the first trial only for the robbery of one of the victims. Unlike appellant before us, however, he was acquitted at his first trial after asserting as his sole defense that he was not one of the robbers. In Ashe's second trial he was tried and convicted on the charge of robbing another of the poker players. His assertion of double jeopardy eventually reached the Supreme Court, where his conviction was reversed. There can be

little doubt that had the "same evidence" test been rigidly applied Ashe could not have prevailed, in view of the fact that he was being tried the second time for the robbery of a different victim.

The decision of the court, however, did not rest upon the barring of the second trial through the employment of the "same transaction" standard of double jeopardy which appellant urges, despite its espousal by Justices Brennan, Douglas, and Marshall. Rather, Justice Stewart narrowly delimited the issue before the court: "It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." 397 U.S. at 446, 90 S.Ct. at 1195.[7] The reversal of Ashe's conviction, then, was on the narrow ground that the issue of Ashe's presence at the robbery had been resolved in his favor at the first trial and the state was "collaterally estopped" from re-litigating the issue in a second prosecution after the prior acquittal.

It is clear that prior acquittal was thus the linchpin of the *Ashe* decision, leading directly to and serving as the foundation for the "collateral estoppel" doctrine applied. This court considered

---

5. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ; 21 Am. Jur.2d, Criminal Law, § 182 et seq.; 22 C. J.S. Criminal Law § 278(1).

6. The use of the "same transaction" test has not been without its own difficulties. See Lugar, "Criminal Law, Double Jeopardy and Res Judicata," 39 Ia.L.Rev. 317 (1954), stating in part:
   This realistic statement as to the "same transaction" test appears in Harris v. State, 193 Ga. 109, 116, 17 S.E.2d 573, 578 (1941) : "* * * It appears that the necessity for engrafting the various exceptions upon the original abstract statement of the same evidence rule has caused the courts of some states, including this State, to repudiate its efficacy as a sound and controlling test. They have therefore some other more definitive rule, and, in so doing, have adopted what is known as the 'same-transaction' test * * * In the language of the same-transaction test, the question is, What constitutes the 'same-

transaction'? * * * [The test] lacks the much to be desired element of being definite and specific. It therefore appears that this court in numerous decisions, although recognizing as controlling the 'same-transaction' test, in its effort to elucidate what in fact constitutes the same transaction, has nevertheless applied elements pertaining to the same-evidence rule; and in doing so has recognized the generally approved principle, that, in order for the transaction to be the same, it must be identical both as a matter of fact and as a matter of law * * *" In other words, either test may bring the same result, though the language route to that destination may vary. [39 Ia.L.Rev. at 324, n. 29.]

7. Justice Harlan, in concurring, stated that he did not believe that the opinion of the court in any way embraced the "same transaction" language in Justice Brennan's concurrence. 397 U.S. at 448, 90 S.Ct. 1189.

the problem and reviewed the *Ashe* decision in the case of *Percy v. State of South Dakota*, 443 F.2d 1232 (8th Cir. 1971) involving a prosecution for and conviction of kidnapping after reversal of a prior conviction, arising out of the same episode, for indecent violation of a five-year-old child. In denying a claim of double jeopardy based in part upon *Ashe* we pointed out that " * * * *Ashe* would not control because here, as distinguished from *Ashe*, the [first] jury found the appellant guilty." 443 F.2d at 1235. Such is, as well, the situation before us.

The Sixth Circuit also reviewed the matter in *Pulley v. Norvell*, 431 F.2d 258 (6th Cir. 1970), involving the armed robbery of two persons committed upon one occasion. The claim of appellant, as here, was grounded on the *Ashe* case and asserted violation of the double jeopardy proscription. A guilty plea had been entered on the first charge. In denying the claim and upholding the multiple prosecutions, the court held as follows:

> *Ashe v. Swenson*, *supra*, overruled *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913, in which on similar facts the Supreme Court had held that the Fifth Amendment did not apply to the States in the field of double jeopardy or collateral estoppel.

■ It is significant that *Ciucci v. Illinois*, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983, decided the same day as *Hoag*, was not overruled by *Ashe*. In *Ciucci* a man was accused of killing his wife and two children by shooting them and leaving them in a burning building. He was tried in three separate trials and convicted each time of first degree murder. The Court affirmed the convictions upon the same basis as *Hoag* but with the factual distinction that in *Ciucci* the defendant was convicted at the earlier trial while the defendant in *Hoag* was acquitted. We construe *Ashe* to recognize a distinction between a case

where the defendant is convicted in trial one of a crime against A and in trial two of a crime occurring the same time against B, and the situation where at the first trial one of the defendants is acquitted of a crime against A under circumstances that the defendant's presence or absence at the scene of the crime is resolved in favor of the accused.

Our interpretation of *Ashe* is strengthened by the concurring opinion of Mr. Justice Brennan joined by Mr. Justice Douglas and Mr. Justice Marshall, espousing the single transaction test. [431 F.2d at 261]

■ The "same transaction" theory, urged upon us by appellant, was again rejected, in so many words, in the application for certiorari filed in the case of *Grubb v. State*, 497 P.2d 1305 (Okl.Cr. App.1972). The defendant in this case went to a home harboring his former female companion. At gunpoint he abducted the woman, threatening death to the family, after robbing the owner of a small sum of money and his car keys. Eventually apprehended, he was tried and convicted twice, first for armed robbery, second for kidnapping the woman. The petition for certiorari, *Grubb v. Okla.*, 409 U.S. 1017, 93 S.Ct. 450, 34 L.Ed.2d 309 (1972), was denied over the dissent of Mr. Justice Brennan, joined by Justices Douglas and Marshall, who took the position that "Under this 'same transaction' test, all charges against petitioner should have been brought in a single prosecution." 409 U.S. at 1018–1019, 93 S.Ct. at 451. Although we recognize, of course, that denial of a writ of certiorari imports no expression of opinion upon the merits of the case, nevertheless the reasons given may serve to illuminate the precise contours of the issue presented.

Upon the facts before us we find no violation of the constitutional provision against double jeopardy.

Affirmed.